**SAC AND FOX NATION OF MISSOURI, Iowa Tribe of Kansas and Nebraska, Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas, Plaintiffs,**

**v.**

**John D. LAFAVER, Secretary Kansas Department of Revenue, Defendant.**

**Civil Action No. 95–4152–DES.**

United States District Court, D. Kansas.

Oct. 30, 1996.

Mark S. Gunnison, Stephen D. McGiffert, Payne & Jones, Chtd., Overland Park, KS, John R. Shordike, Patricia Prochaska, Berkeley, CA, Paul Alexander, Alexander & Karshmer, Washington, DC, for Sac and Fox Nation of Missouri.

Mark S. Gunnison, Stephen D. McGiffert, Payne & Jones, Chtd., Overland Park, KS, Iowa Tribe of Kansas & Nebraska.

Pedro L. Irigonegaray, Robert V. Eye, Irigonegaray & Associates, Topeka, KS, Mario Gonzalez, Horton, KS, for The Kickapoo Tribe of Indians, of the Kickapoo Reservation in Kansas.

Lester N. Collier, Legal Services Bureau, Kansas Department of Revenue, John Michael Hale, Amy Weller Liebau, Kansas Department of Revenue Bureau of Legal Services, Topeka, KS, for John D. Lafaver, Secretary Kansas Department of Revenue.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the plaintiffs' Motion for Issuance of Preliminary Injunction (Doc. 3). The plaintiffs challenge the Kansas Department of Revenue's ("DOR") imposition of a tax on motor fuel sales on Indian lands, including sales from distributors to the plaintiffs. On October 5, 1995, this court entered a temporary restraining order enjoining and restraining DOR from applying and enforcing the collection of any motor fuels tax on tribal retail motor fuel sales on Indian lands, including sales from distributors to the plaintiffs, as outlined in Senate Bill No. 88, signed on May 7, 1995, and House Bill No. 2161, signed on May 17, 1995, and implemented on September 6, 1995. The court further ordered that the temporary restraining order would be effective until such time as the court had ruled on the plaintiffs' motion for preliminary injunction.

After several requests for continuance from the parties, the court heard arguments on the preliminary injunction on September 30, 1996. At the conclusion of the hearing, the court took the matter under advisement. Having reviewed the pleadings and the arguments of counsel, the court is now prepared to rule.

### I. BACKGROUND

The plaintiffs are three federally-recognized Indian Tribes: The Sac and Fox Na-

tion of Missouri ("Sac and Fox"); the Iowa Tribe of Kansas and Nebraska ("Iowa"); and the Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas ("Kickapoo") (collectively the "Tribes"). Sac and Fox is the beneficial owner of and exercises jurisdiction over the Sac and Fox Indian Reservation, as well as land located at Reserve, Kansas, which land is held in trust for Sac and Fox by the United States of America. Iowa is the beneficial owner of and exercises jurisdiction over the Iowa Tribe of Kansas and Nebraska Indian Reservation. A part of the Iowa land is held in trust for Iowa by the United States of America. Kickapoo is the beneficial owner of and exercises jurisdiction over land within the Kickapoo Nation's federally recognized boundaries, which land is held in trust for Kickapoo by the United States of America. All three plaintiffs operate retail gasoline stations on their reservations, and assess tribal taxes on their motor fuel sales.

On May 7, 1995, the Kansas Legislature passed Senate Bill 88 ("SB 88"), which is codified at Kan.Stat.Ann. § 79–3408g(d)(2). Section 79–3408g(d)(2) provides as follows:

No tax is hereby imposed upon or with respect to the following transactions: ... (2) The sale or delivery of motor-vehicle fuel or special fuel to the United States of America and such of its agencies as are now or hereafter exempt by law from liability to state taxation, except that this exemption shall not be allowed if the sale or delivery of motor-vehicle fuel or special fuel is to a retail dealer located on an Indian reservation in the state and such motor-vehicle fuel or special fuel is sold or delivered to a nonmember of such reservation.

On May 17, 1995, the legislature passed House Bill 2161 ("HB 2161"), which is codified at Kan.Stat.Ann. § 79–3408(d)(2). Section 79–3408(d)(2) contains the exemption language of section 79–3408g(d)(2), but does not contain the exception for deliveries to nonmembers of Indian reservations. Section 79–3408(d)(2) reads as follows: "No tax is hereby imposed upon or with respect to the following transactions: ... (2) The sale or delivery of motor-vehicle fuel or special fuel

to the United States of America and such of its agencies as are now or hereafter exempt by law from liability to state taxation."

On September 6, 1995, DOR announced its intention to begin collecting tax on motor fuel sales on Indian lands. The plaintiffs allege that the Kansas statutes purporting to subject the Tribes to the State's motor fuels tax are unconstitutional and preempted by federal law.

## II. DISCUSSION

To obtain a preliminary injunction, the movant must establish that:

(1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1198 (10th Cir.1992) (quoting *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir.1986)). If the moving party satisfies the first three elements, the standard for meeting the fourth requirement, substantial likelihood of success on the merits, becomes more lenient. In such a case, the movant need only show "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation." *Id.* at 1199. Whether to issue a preliminary injunction is committed to the sound discretion of the trial court. *Id.* at 1198.

The court found in its October 5, 1995, memorandum and order that the plaintiffs satisfied all four elements. The defendant has failed to present any argument which would require the court to reconsider its finding as to the first three elements. DOR acknowledges that the plaintiffs may face economic hardship if the preliminary injunction does not issue, but maintains that the plaintiffs' claims of lost revenue are speculative. In order to issue a preliminary injunction, however, the court need not find

that the claimed injury is certain to result—a likelihood of irreparable injury is sufficient. *Bath Indus., Inc. v. Blot,* 427 F.2d 97, 111 (7th Cir.1970). Furthermore, where, as here, the plaintiffs allege deprivation of a constitutional right, no further showing of irreparable injury is generally necessary. 11A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2948.1, at 161 (1995); *see also Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976); *Community Communications Co. v. City of Boulder, Colo.,* 660 F.2d 1370, 1376 (10th Cir.1981).

■ Whether the Tribes have satisfied the fourth requirement for a preliminary injunction, though, requires further analysis. The court based its October 5, 1995, order, in part, on the existence of tax compacts between DOR and the Tribes. The compacts precluded the state of Kansas from taxing transactions occurring on the reservations which were subject to tribal tax. The compacts with Iowa and Kickapoo have now expired, however, and the compact with Sac and Fox will expire on January 3, 1997.

The Tribes argue that notwithstanding the expiration of the tax compacts, the State of Kansas cannot impose its motor fuels tax on Indian reservations. The plaintiffs maintain that the Kansas Legislature sought to eliminate the tax exemption for sale of motor fuels to retail dealers on Indian reservations by passing SB 88. According to the plaintiffs, the subsequent passage of HB 2161, which did not contain the exception for sales on Indian reservations, served to repeal SB 88. The Tribes also contend that the motor fuels tax is precluded by Kan.Stat.Ann. §§ 79–3408(d)(1) and 79–3408g(d)(1). Those sections provide that "[n]o tax is hereby imposed upon or with respect to the following transactions ... (1) The sale or delivery of motor-vehicle fuel or special fuel for export from the state of Kansas to any other state or territory or to any foreign country." The Act for Admission of Kansas Into the Union, section 1, states that "all [Indian] territory shall be excepted out of the boundaries, and constitute no part of the state of Kansas."

The defendant counters that the legislature did not intend that HB 2161 repeal SB 88, but rather that the two bills were passed with different purposes in mind. DOR contends that the legislature passed SB 88 to clarify the fact that it did not consider Indian tribes to be agencies of the United States for purposes of the exemption, while HB 2161 was passed to curb fuel tax evasion by requiring retailers to maintain records of fuel deliveries.

The defendant argues, in the alternative, that even if HB 2161 did repeal SB 88, and even if the Tribes are considered territories under sections 79–3408(d)(1) and 79–3408g(d)(1), or agencies under sections 79–3408(d)(2) and 79–3408g(d)(2), the statutes still do not operate to exempt motor fuel sales to the Tribes. DOR maintains that sections 79–3408(a) and 79–3408g(a) tax distributors, not retailers such as the Tribes, and the exemptions thus do not apply to the plaintiffs. DOR asserts that its prior practice of exempting distributors which sold to the Tribes from the motor fuels tax was based on the existence of tax compacts between the Tribes and the State, not on any construction of section 79–3408(d)(2) that the Tribes were exempted as agencies of the United States.

The court is not convinced that, absent SB 88, the State could impose its tax on the plaintiffs. If the Tribes are not agencies of the United States within the meaning of section 79–3408(d)(2), then the exemption contained in that statute never exempted sales to the Tribes, and the exception added by SB 88 was therefore unnecessary. The court is reluctant to interpret the statute in a manner which would render part of the statute superfluous. *See Fuller v. Norton,* 86 F.3d 1016, 1024 (10th Cir.1996). It is not necessary for the court to determine, however, whether the language of either SB 88 or HB 2161 permits the tax, in order to decide that the plaintiff has raised "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation." *Cruce,* 972 F.2d at 1199. The court finds that there exist substantial questions as to whether the state of Kansas has jurisdiction to impose its motor fuels tax on Indian land.

■ "[A]bsent cession of jurisdiction or other federal statutes permitting it ... a State is without power to tax ... reservation Indians." *Oklahoma Tax Comm'n v. Chickasaw Nation,* — U.S. —, —, 115 S.Ct. 2214, 2220, 132 L.Ed.2d 400 (1995); *see also McClanahan v. State Tax Comm'n,* 411 U.S. 164, 177, 93 S.Ct. 1257, 1265, 36 L.Ed.2d 129 (1973) (25 U.S.C. § 1322(a) prohibits states from exercising jurisdiction over reservation Indians without the tribe's consent). On the other hand, if the legal incidence of the tax rests on non-Indians, the tax may be enforceable. *Chickasaw,* — U.S. at —, 115 S.Ct. at 2220. If the incidence of the tax does not fall on Indians, and "the balance of federal, state, and tribal interests favors the State, and federal law is not to the contrary, the State may impose its levy, and may place on a tribe or tribal members 'minimal burdens' in collecting the toll." *Id.* (citations omitted).

DOR maintains that the incidence of the Kansas motor fuels tax falls on the distributor, not the Indian retailer. The defendant refers the court to Kan.Stat.Ann. § 79–3410(a), which provides that "[e]very distributor, manufacturer or importer ... shall compute and shall pay to the director ... the amount of taxes due to the state." Like the Oklahoma motor fuels tax statute construed in *Chickasaw,* the Kansas act does not expressly identify who bears the tax's legal incidence. *Chickasaw,* — U.S. at —, 115 S.Ct. at 2221. Kan.Stat.Ann. §§ 79–3408(a) and 79–3408g(a) state only that "[a] tax per gallon or fraction thereof ... is hereby imposed on the use, sale or delivery of all motor vehicle fuels or special fuels which are used, sold or delivered in this state for any purpose whatsoever." The defendant argues that the Kansas statute is distinguishable from the Oklahoma statute, however, in that the Oklahoma statute directed the distributor to remit the motor fuels tax "on behalf of a licensed retailer." *Chickasaw,* — U.S. at —–—, 115 S.Ct. at 2221–22 (quoting Okla.Stat. tit. 68, § 505(C) (1991)). The Court inferred from this language that the tax obligation was legally the retailer's, not the distributor's. *Id.* at —, 115 S.Ct. at 2222.

The plaintiffs respond that the Kansas act contains a similar pass-through provision. Kan.Stat.Ann. § 79–3409 states that "[e]very distributor paying such tax or being liable for the payment shall be entitled to charge and collect such tax ... as a part of the selling price." The plaintiffs argue that because distributors would be free to add the tax to their selling price without any statutory authorization, the inclusion of the pass-through language, coupled with the absence of comparable language entitling retailers to similarly pass along the tax to consumers, evidences the legislature's intent that the tax be born by the retailer.

The Tribes point to other sections of the Kansas tax law which also impose duties on the retailer. Section 79–3408(c) provides as follows: "Such taxes shall be paid but once. Such tax shall be computed on all motor-vehicle fuels or special fuels received by each distributor, manufacturer, importer or retailer in this state...." Section 79–3464e(a) provides that "[i]t shall be unlawful for any distributor, importer, exporter, manufacturer, retailer, user, carrier, transporter or any other person to: ... fail, neglect or refuse to pay the director, within the time required by this act, any tax ... for which such person is liable under the provisions of this act."

■ Some tax statutes expressly identify who bears the tax's legal incidence. *See, e.g., Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 482, 96 S.Ct. 1634, 1645, 48 L.Ed.2d 96 (1976) (Montana statute provided that cigarette tax was "conclusively presumed to be [a] direct [tax] on the retail consumer"). When the statute is not so specific, the question of legal incidence is one of interpretation of the statute as written and applied. *Chickasaw,* — U.S. at —, 115 S.Ct. at 2221. Reading the motor fuels tax act in its entirety, the court finds that the Tribes have raised sufficient questions as to the incidence of the motor fuels tax so as to render the issue a fair ground for litigation.

Even if the court were to agree with the defendant that the incidence of the tax falls on the distributor, the State might still, under *Chickasaw,* lack jurisdiction to apply its motor fuels tax on Indian land. The state

may impose its tax only "if the balance of federal, state, and tribal interests favors the State, and federal law is not to the contrary." *Chickasaw*, —— U.S. at ——, 115 S.Ct. at 2220.

The plaintiffs cite *Central Machinery Co. v. Arizona State Tax Comm'n*, 448 U.S. 160, 100 S.Ct. 2592, 65 L.Ed.2d 684 (1980), for the proposition that the Indian trader laws, 25 U.S.C. §§ 261–264, constitute a comprehensive federal statutory scheme which preempts the State's assessment of the motor fuels tax on Indian land. 25 U.S.C. § 261 provides that:

> [t]he Commissioner of Indian Affairs shall have the sole power and authority to appoint traders to the Indian tribes and to make such rules and regulations as he may deem just and proper specifying the kind and quantity of goods and the prices at which such goods shall be sold to the Indians.

In *Central Machinery*, the Supreme Court held that the Indian trader laws preempted a state tax on the sale of machinery to Indian tribes. 448 U.S. at 165, 100 S.Ct. at 2596.

The plaintiffs also submit that the balance of federal, state, and tribal interests favors the Tribes. The Tribes claim that if they are forced to collect the Kansas motor fuels tax, in addition to the tribal motor fuels tax which they already charge, they will realize decreased sales and a significant loss of revenue. The Tribes project resulting unemployment and a curtailment of social and medical services on the reservations, which in turn would render Tribal members more dependent on federal assistance. The plaintiffs submit that these tribal and federal interests outweigh the State's interests. According to the plaintiffs, the State's interest in reducing tax fraud does not extend into Indian land, which was excluded from the territorial limits and jurisdiction of the state of Kansas by the Act for the Admission of Kansas Into the Union. The plaintiffs also argue that imposition of the Kansas tax on Indian land would generate minimal additional revenue for the State.

The court finds that under *Chickasaw*, the plaintiffs have raised questions concerning the incidence of the proposed tax, the balance of federal, state, and tribal interests, and preemption under federal law which are so serious, substantial, difficult and doubtful as to make such issues a fair ground for litigation.

**IT IS THEREFORE BY THE COURT ORDERED** that the plaintiff's Motion for Issuance of Preliminary Injunction (Doc. 3) is granted. The defendant Kansas Department of Revenue is enjoined and restrained from applying or enforcing the Kansas motor fuels tax on motor fuel sales on Indian lands, including sales from distributors to the Tribes, as implemented on September 6, 1995, pending adjudication of the plaintiffs' claims.

**IT IS FURTHER ORDERED** that the court has considered the issue and determined that a bond, pursuant to Fed.R.Civ.P. 65(c), is unnecessary because "there is an absence of proof showing a likelihood of harm" to the defendant. *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir.1964).