266 Kan. 464 (1998)
970 P.2d 60
KATHY KAUL, CEO INDIAN COUNTRY GENERAL STORE, INC.; and ROGER KAUL d/b/a ROGER'S SERVICE, Appellants,
v.
STATE OF KANSAS DEPARTMENT OF REVENUE, and JOHN LAFAVER, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF REVENUE AND INDIVIDUALLY, Appellees.
No. 79,647.
Supreme Court of Kansas.
Opinion filed December 18, 1998.
*465 Pantaleon Florez, Jr., of Florez & Frost, P.A., of Topeka, argued the cause, and Kurt L. James, of the same firm, was with him on the briefs for appellants.
John Michael Hale, of Kansas Department of Revenue, argued the cause, and Jason L. Reed and Christopher J. Tymeson, legal interns, were with him on the briefs for appellees.
The opinion of the court was delivered by
LOCKETT, J.:
Kansas retailers in the business of selling motor fuel are wholly owned by Native Americans, but not members of an Indian reservation within the borders of this state where their retail establishments are located. Neither the Prairie Band of Kansas Potawatomi nor any member of the tribal reservation upon which the Retailers are located is a party to this suit. The district court found the Native American retailers were not exempt from payment of the state motor fuel tax collected by distributors that supplied gasoline and diesel fuel for sale. The Native American retailers appealed, claiming: (1) that K.S.A. 79-3408 exempts them from the payment of retail sales tax because the Potawatomi Indian reservation is a "territory" or other "state"; (2) the State's refusal to grant the tax exemption violated the Equal Protection Clause of the Fourteenth Amendment; (3) the legal incidence of tax under *466 the Kansas motor fuel tax statutes is on the retailer; and (4) the district court erred in failing to grant a temporary restraining order and preliminary injunction.
Plaintiffs are two Native American members of the Citizen Band Potawatomi Tribe of Oklahoma (Retailers) who own or owned retail gasoline convenience stores located on the Prairie Band of Kansas Potawatomi Reservation approximately 5 miles south of Holton, Kansas. Retailers were billed by their distributors for payment of the motor fuel tax.
Until September 6, 1995, Retailers were not taxed by the State for motor fuel delivered for retail sale to consumers. On that date, John LaFaver, Secretary of the Kansas Department of Revenue (KDR), issued Notice 95-11 which announced that KDR was going to begin "enforcement of a 1995 law requiring the department to collect motor fuel taxes from distributors when fuel is subsequently sold on Native American reservations in Kansas." The Secretary set out a procedure through which Native Americans whose claims exceeded $25 could request and receive a refund for tax they paid for motor fuel purchased on a Kansas Indian reservation. Nontribal members who purchased motor fuel on the reservation were not eligible for a refund of the motor fuel tax paid.
After September 6, 1995, the distributors billed Retailers for the cost of the gasoline purchased, plus $0.18 per gallon for Kansas motor fuel tax. Retailers filed an action in the district court of Kansas to enjoin KDR from collecting tax on gasoline purchased by them for resale. First, Retailers claimed an exemption under K.SA. 79-3408(d)(1) which specifically exempts the imposition of tax on fuels delivered "for export from the state of Kansas to any other state or territory or to any foreign country." (Emphasis added.) Second, Retailers claimed that treating Indian territory differently than other territories for tax purposes violated the Equal Protection Clause of the Constitution of the United States. Retailers also asserted that a tax compact between the Potawatomi and the State of Kansas precluded taxation of fuels delivered to businesses on the reservation. This issue was not preserved for appeal. Finally, Retailers claimed that the incidence of taxation on them *467 was not permissible under well-settled law governing taxation of Indians on reservations.
In the district court the State argued against the injunction, claiming that under the statutory scheme the incidence of taxation falls on the distributor, not the retailer; therefore, Indian retailers are not taxed. The State also argued that the exemption from taxation under K.S.A 79-3408 did not apply because Indian reservations are not separate territories. Consequently, the State contends, Retailers were not being treated dissimilar under Kansas law to any other seller of fuels in Kansas; therefore, no constitutional right was violated by the tax.
Both parties filed motions for summary judgment. In granting the State's motion for summary judgment, the district court noted that there was no factual dispute: The plaintiffs are Indians, but they are not members of the tribe of the reservation. Both retail businesses are situated on a state highway, within the state of Kansas. Their retail sales are to tribal members from the reservations and the traveling public on the major highway which connects Topeka to the nearest city to the north.
The district judge considered K.S.A. 79-3408, which provides, in part:
"(a) A tax per gallon or fraction thereof, at the rate computed as prescribed in K.S.A. 79-34,141, and amendments thereto, is hereby imposed on the use, sale or delivery of all motor vehicle fuels or special fuels which are used, sold or delivered in this state for any purpose whatsoever.
....
"(d) No tax is hereby imposed upon or with respect to the following transactions: (1) The sale or delivery of motor-vehicle fuel or special fuel for export from the state of Kansas to any other state or territory or to any foreign country."
The district judge found that the intent of the legislature in enacting K.S.A. 79-3408 was to impose a tax on wholesale gasoline sold within the boundaries of the state to raise revenue for the maintenance, construction, and upkeep of highways within the state of Kansas. The judge noted that the legal incidence for collecting this tax falls on the distributor of the fuel, and the statute excepted the sales of fuel from the tax where the fuel is exported to other states, territories, or foreign countries. The judge concluded *468 that the exception provided in K.S.A. 79-3408(d)(1) refers to other states, territories, or foreign countries located outside the boundaries of the state of Kansas, and those sales are exempt from Kansas tax because the sellers of motor fuel under the jurisdiction of foreign governments are taxed by their respective governments to maintain the roads within that jurisdiction.
The judge determined that as a matter of law the Indian reservations are not included in the statutory term "territory." The judge found the State's motor fuel taxation method did not treat individual retailers on a reservation adjacent to a major highway any differently than any other retailer within the state of Kansas, and there is no discrimination because the plaintiffs are treated the same as any other retail gasoline outlet situated on a state highway in Kansas. In granting the State's motion for summary judgment, the judge incorporated and included the authorities cited by the State in support of its motion.
This court assumed jurisdiction of Retailers' appeal pursuant to K.S.A. 20-3018(c).

Exempt Territory
Retailers first argue that the district court erred in determining that the Potawatomi Indian reservation is not a territory exempt from taxation by K.S.A. 79-3408(d)(1). Interpretation of a statute is a question of law, and our review is unlimited. In re Tax Appeal of Boeing Co., 261 Kan. 508, Syl. ¶ 1, 930 P.2d 1366 (1997).
In support of their argument, Retailers point out that Kansas courts have previously determined that under the Organic Act and Act for Admission, the Potawatomi Indian reservation is excluded from the boundaries of Kansas and that the reservation falls within the plain meaning of the term "territory." In addition, Retailers point out that other jurisdictions have deemed Indian Nations to be territories for purposes of statutory interpretation. See, e.g., Tracy v. Superior Court, 168 Ariz. 23, 33, 810 P.2d 1030 (1991); People v. Superior Court, 224 Cal. App.3d 1405, 1410, 274 Cal. Rptr. 586 (1990).
Retailers rely primarily on In re Tax Exemption Application of Kaul, 261 Kan. 755, 769, 933 P.2d 717 (1997), where this court *469 held that the Potawatomi Indian reservation is excluded from Kansas boundaries, stating:
"We conclude that interpreting provisions of the Kansas acts as they are commonly understood does not support the County's position that all Indian land held in fee simple by an Indian is included within the state's boundaries and subject to an in rem ad valorem tax. The plain meaning appears more reasonably to state that all Indian land was to be excluded from the boundaries of the state and not subject to taxation, unless it was specifically included by treaty or an act of Congress."
Based on the language quoted above and the other authority cited, Retailers conclude that the Potawatomi reservation is clearly a territory outside the boundaries of Kansas.
The State, relying on the Organic Act and Act for Admission, claims that the term "territory" as used in the exemption statute is technical and does not include Indian reservations within the boundaries of this state. As authority for this argument, the State points to other cases where courts have found that Indian Nations are not territories. According to the State, the sections of Application of Kaul cited by Retailers are beneficial in determining the physical boundaries of the Indian reservations for purposes of determining exclusion from state jurisdiction. The State argues that the Organic Act provides that Kansas may not impose a state or local tax on the land and that the Act did not intend to define Indian land as a legal territory.
For authority that Indian reservations are within the boundaries of the state, the State cites The Kansas Indians, 72 U.S. (5 Wall.) 737, 18 L. Ed. 667 (1866). In The Kansas Indians, Johnson County's taxation of the Shawnee Indian lands was upheld by this court. The Indians were granted review by the United States Supreme Court. In the Supreme Court, Kansas argued that the lands in question were not in one contiguous tract but were interspersed among the lands which had been sold to the United States government. The Supreme Court rejected state taxation, stating:
"There can be no question of State sovereignty in the case, as Kansas accepted her admission into the family of States on condition that the Indian rights should remain unimpaired and the general government at liberty to make any regulation respecting them, their lands, property or other rights, which it would have been *470 competent to make if Kansas had not been admitted into the Union. The treaty of 1854 left the Shawnee people a united tribe, with a declaration of their dependence on the National government for protection and the vindication of their rights.... As long as the United States recognizes their national character they are under the protection of treaties and the laws of Congress, and their property is withdrawn from the operation of State laws." (Emphasis added.) 72 U.S. (5 Wall.) at 756-7.
It is clear, therefore, that Indian reservations are separate and distinct nations inside the boundaries of the state of Kansas and that Indian rights are protected by treaty with the United States. The Kansas tax exemption statutes must be construed consistent with that conception of the boundaries of Indian reservations.
K.S.A. 79-3408 has a long history of legislative amendments. The amendments have resulted in a number of statutes, including K.S.A. 79-3408g, which address different aspects of the exemption. On May 28, 1998, subsequent to oral argument, this court directed the parties to state their respective positions regarding the significance of K.S.A. 79-3408g(d)(2) to Retailers' claim of exemption from tax on motor fuel. The parties were granted additional time to respond to this question.
K.S.A. 79-3408g(d)(2), which was enacted in 1995 when the legislature amended the exemption statute twice, provides that no tax on motor vehicle fuel is imposed on
"[t]he sale or delivery of motor-vehicle fuel or special fuel to the United States of America and such of its agencies as are now or hereafter exempt by law from liability to state taxation, except that this exemption shall not be allowed if the sale or delivery of motor-vehicle fuel or special fuel is to a retail dealer located on an Indian reservation in the state and such motor-vehicle fuel or special fuel is sold or delivered to a nonmember of such reservation."
Retailers respond that K.S.A. 79-3408g(d)(2) is unconstitutional and creates a suspect class of Indians for which the State cannot articulate a compelling interest for the disparate treatment accorded otherwise identical Indian neighbors. They contend that the distinction violates 25 U.S.C. 479 (1994), which defines the term "Indian" as all persons of Indian descent who are members of any recognized Indian tribe. Retailers also assert that K.S.A. 79-3408(d)(2) and K.S.A. 79-3408g(d)(2) cannot be reconciled, and *471 they urge this court to uphold the long-standing presumption in statutory construction that the legislature intends to repeal an existing statute when it enacts an amendment to that statute. Retailers contend that because the United States Supreme Court has a history and policy of leaving Indians free of state jurisdiction and control, construction of the statute must be consistent with that policy. Retailers conclude, therefore, that this court must find that they are exempt from Kansas taxation on motor fuel purchased for resale to Indians.
The State responds that the legislature attempted in 1995 to clarify that retailers located on Indian reservations are not exempt from paying fuel tax. The State notes that the 1998 Kansas Legislature repealed K.S.A. 79-3408g and amended K.S.A. 79-3408 to include the language similar to that previously found in K.S.A. 79-3408g(d)(2). The State argues that neither K.S.A. 79-3408g(d)(2) nor the 1998 amendments to K.S.A. 79-3408 are determinative of this case because the payer of motor fuel taxes is the distributor, not the retailer, and the distributor has no claim to an exemption in this case. The State asserts that K.S.A. 79-3410, the statute which designates the distributor as the remitter of the tax to the state director, is the key to resolving this case.
We disagree with the positions articulated by both the State and Retailers.

Legislative History of K.S.A. 79-3408
It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. City of Wichita v. 200 South Broadway, 253 Kan. 434, 436, 855 P.2d 956 (1993); see State v. Riley, 259 Kan. 774, 776, 915 P.2d 774 (1996); State v. Gonzales, 255 Kan. 243, 248-49, 874 P.2d 612 (1994). When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. Hughes v. Inland Container Corp., 247 Kan. 407, 414, 799 P.2d 1011 (1990).
Where the parties claim the construction of a statute is uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be *472 accomplished, and the effect the statute may have under the various constructions suggested. State v. Gonzales, 255 Kan. 243, 249, 874 P.2d 612 (1994) (quoting Brown v. Keill, 224 Kan. 195, Syl. ¶ 3, 580 P.2d 867 [1978]).
K.S.A. 79-3408 was enacted in 1933. In the years since, when the legislature amended K.S.A. 79-3408 without simultaneously repealing the existing statute, new statutes were created with a letter designation after the statute number. See, e.g., K.S.A. 79-3408g.
K.S.A. 79-3408 and K.S.A. 79-3408g were amended twice in 1995. See L. 1995, ch. 242, § 5; ch. 262, § 30. The two statutes are identical with a few exceptions: The revisions in subsections (c) and (e) below are found in K.S.A. 79-3408 only, and the revisions in subsection (d)(2) are found in K.S.A. 79-3408g only.
"(a) A tax per gallon or fraction thereof, at the rate computed as prescribed in K.S.A. 79-34,141, and amendments thereto, is hereby imposed on the use, sale or delivery of all motor vehicle fuels or special fuels which are used, sold or delivered in this state for any purpose whatsoever. [79-3408; 79-3408g]
....
"(c) Such taxes shall be paid but once. Such tax shall be computed on all motor-vehicle fuels or special fuels received by each distributor, manufacturer, importer or retailer in this state and paid in the manner provided for herein, except that an allowance of 2.5% shall be made and deducted by the distributor to cover all ordinary losses in handling such motor-vehicle fuels or special fuels. No such allowance shall be made on any motor-vehicle fuel or special fuel exported from the state or sold to the United States of America or any of its agencies or instrumentalities as are now or hereinafter exempt by law from liability to state taxation. No such allowance shall be made for any motor-vehicle fuel or special fuel sold or disposed of to a consumer in tank car, transport or pipeline lots. [79-3408]
"(d) No tax is hereby imposed upon or with respect to the following transactions:
(1) The sale or delivery of motor-vehicle fuel or special fuel for export from the state of Kansas to any other state or territory or to any foreign country. [79-3408; 79-3408g]
(2) The sale or delivery of motor-vehicle fuel or special fuel to the United States of America and such of its agencies as are now or hereafter exempt by law from liability to state taxation, except that this exemption shall not be allowed if the sale or delivery of motor-vehicle fuel or special fuel is to a retail dealer located on an Indian reservation in the state and such motor-vehicle fuel or special fuel is sold or delivered to a nonmember of such reservation. [79-3408g]
....
"(e) Each distributor, manufacturer, importer, exporter or retailer shall make full reports and furnish such further information as the director may require with *473 reference to all transactions upon which no tax is to be paid. [79-3408]" (Emphasis added.)
It is clear that K.S.A. 79-3408 and K.S.A. 79-3408g were both in effect during the period relevant to this case.
"`"In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." [Citation omitted.]'" KPERS v. Reimer & Koger Assocs., Inc., 262 Kan. 635, 643, 941 P.2d 1321 (1997).
K.S.A. 79-3408(d)(1) and K.S.A. 79-3408g(d)(1) exclude the imposition of the tax on any sale or delivery of motor fuel exported from Kansas to any other state or territory or to any foreign country. K.S.A. 79-3408g(d)(2) specifically excludes from the tax exemption the sale or delivery of motor fuel to a retail dealer located on an Indian reservation in this state where the motor fuel is sold or delivered to a nonmember of such reservation.
The district court correctly determined the exemption from taxation provided by K.S.A. 79-3408(d)(1) does not apply to Retailers because Indian reservations within the boundaries of the state are not included as territories outside the boundaries of Kansas.

Standing
The State asserted that Retailers have no standing to obtain an injunction because the incidence of taxation does not fall on them, i.e., they are not adversely affected by the statute.
In Sac and Fox Nation of Missouri v. LaFaver, 946 F. Supp. 884 (D. Kan. 1996), this very issue was raised by the KDR against three Indian tribes who operated retail gasoline stations on their reservations. In Sac and Fox, the federal district court noted that the Supreme Court had held that if the incidence of state tax imposed on a reservation does not fall on the Indians and the balance of federal, state, and tribal interests favors the State, and if federal law is not to the contrary, the State may impose its levy and may place on the tribe or tribal members "minimal burdens" in collecting the tax. 946 F. Supp. at 888 (citing Oklahoma Tax Comm'n v. Chickasaw Nation, 515 U.S. 450, 459, 132 L. Ed.2d 400, 115 *474 S. Ct. 2214 [1995]). The federal district judge concluded in Sac and Fox that although the statutes permit the distributors to pass the tax on to the retailer, there is no similar provision permitting the tax to be passed to the consumer by the retailer. The federal judge granted the tribes' request for an injunction, finding "the Tribes have raised sufficient questions as to the incidence of the motor fuels tax so as to render the issue a fair ground for litigation." 946 F. Supp. at 888. The 1998 Kansas Legislature amended K.S.A. 79-3408 to clarify the question of where the incidence of taxation falls. The legislature provided that unless otherwise specified in K.S.A. 79-3408c, the incidence of the tax falls on the distributor. L. 1998, ch. 96, § 2.
A critical statute in reaching our determination is K.S.A. 79-3409, which provides, in part:
"Every distributor paying such tax or being liable for the payment shall be entitled to charge and collect such tax on motor-vehicle fuels or special fuels sold or delivered by such distributor, as a part of the selling price." (Emphasis added.)
The statute clearly states that the distributor is liable for the payment of the tax, but the distributor may collect the tax from the retailer as part of the selling price of the motor fuel. Here, the distributors itemized the tax on their bills to Retailers as money due the State for the tax on the sale of motor fuel.
The legislature intended that distributors pay the tax and include the fuel tax in the sales price when delivering fuel to retailers or collect the fuel tax from the retailers at the time the distributors deliver motor fuel to the retailers. Therefore, Retailers are taxed and have standing in this case.

Restraining Order and Injunction
K.S.A. 60-901 et seq. set forth the procedure for obtaining an injunction.
"When it appears by a verified pleading or affidavit that a party is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce injury to a party; or when during the litigation it appears that a party is doing or threatens or is about to do, or is procuring or suffering to be done, some act in violation of a party's rights respecting the subject *475 of the action, or tending to render the judgment ineffectual, an order may be granted to restrain such act." K.S.A. 60-902.
An injunction is an order to do or refrain from doing a particular act. K.S.A. 60-901. While an injunction may be used to restrain certain conduct, there must be some indication that there is a protected threatened injury. U.S.D. No. 503 v. McKinney, 236 Kan. 224, Syl. ¶ 6, 689 P.2d 860 (1984). Retailers claim they are entitled to an injunction because the incidence of taxation on them is not permissible under well-established law governing taxation of Indians on reservations.
In Oklahoma Tax Comm'n v. Chickasaw Nation, 515 U.S. 450, issues similar to those raised in this case were addressed. The case sets out the law that applies when a state attempts to levy tax directly on Indian tribes and their members inside "Indian country" (reservations). In Chickasaw, Oklahoma imposed a gasoline tax on motor fuel sold by Chickasaw Nation-owned retail stores located on tribal land to tribal members and others. The Indian tribe commenced an action in the United States District Court seeking to prevent Oklahoma from enforcing several state taxes against the tribe and its members. Both sides filed motions for summary judgment. The district court found in favor of the State as to its imposition of motor fuel taxes on fuel sold by tribal retail stores on tribal land and in favor of the tribe as to the imposition of the State's income tax on the wages of tribal members employed by the tribe but residing in the state outside Indian country. The United States Court of Appeals for the 10th Circuit ruled in favor of the tribe, holding that (1) the State could not tax fuel sold by tribal retail stores, because (a) the legal incidence of the fuel tax fell on the tribe, and (b) no congressional authorization for such tax was asserted by the State; and (2) a treaty between the United States and the tribe prohibited Oklahoma income tax on any tribal member employed by the tribe, regardless of residence.
The matter proceeded to the United States Supreme Court. There, the tribe contended that the incidence of the gasoline excise tax actually fell on the retailer rather than on distributors or consumers; therefore, the tax fell directly on the tribe as owner of the *476 gasoline retail store. The tribe asserted that because taxation is an impermissible interference with tribal sovereignty, Oklahoma was without authority to tax tribes absent congressional approval. 515 U.S. at 455.
Oklahoma responded that Indian tribes and their members are generally immune rather than absolutely immune from state taxation. Oklahoma asserted that in some instances of state taxation, the courts are required to balance the interests of the state and the tribe. Oklahoma pointed out that the fuel was not produced or refined in Indian country and the tribe was selling much of its gasoline to nontribe members who were driving on Oklahoma state roads. Therefore, the State argued, the burden on Oklahoma was significant. Oklahoma also pointed out that "`the levy does not reach any value generated by the Tribe on Indian land.'" 515 U.S. at 458.
The Supreme Court rejected Oklahoma's argument that state and tribal interests should be balanced. The Court observed that when states have taxed Indian tribes or their members directly, the Court has used a more categorical approach.
The Court pointed out: "`"[A]bsent cession of jurisdiction or other federal statues permitting it," we have held, a State is without power to tax reservation lands and reservation Indians.'" 515 U.S. at 458 (quoting County of Yakima v. Confederated Tribes and Bands of Yakima Nation, 502 U.S. 251, 258, 116 L. Ed.2d 687, 112 S. Ct. 683 [1992]). Under the categorical approach analysis, a tax is impermissible if its incidence falls on the tribe or tribe members. 515 U.S. at 458. Thus, a determination of the incidence of the tax was necessary.
The Chickasaw Court stated that the dispositive question in Indian tax cases is who bears the legal incidence of the tax. 515 U.S. at 458. If the legal incidence of an excise tax rests on a tribe or on tribal members for sales made inside Indian country, the tax cannot be enforced absent clear congressional authorization. But if the legal incidence of the tax rests on non-Indians, no categorical bar prevents enforcement of the tax. In other words, if the balance of federal, state, and tribal interests favors the State, and federal law is not to the contrary, the State may impose its levy, see Washington *477 v. Confederated Tribes, 447 U.S. 134, 154-157, and may place on a tribe or tribal members "minimal burdens" in collecting the toll. Department of Taxation and Finance of N.Y. v. Milhelm Attea & Bros., 512 U.S. 61, 73, 129 L. Ed.2d 52, 114 S. Ct. 2028 (1994).
The Chickasaw Court then turned to whether the incidence of taxation fell on the retailer or another party. Noting that the 10th Circuit had determined the incidence of tax fell on the retailer and considering the Supreme Court's standard of review, the Court accepted the 10th Circuit's determination. 515 U.S. at 461 (citing Haring v. Prosise, 462 U.S. 306, 314 n.8, 76 L. Ed.2d 595, 103 S. Ct. 2368 [1983]).
The United States Supreme Court observed that the Oklahoma statute did not contain a "pass-through" provision that required distributors and retailers to pass the cost of the tax to the consumer. Thus, the statute did not contain language clearly articulating where the incidence of the tax fell. Therefore, the Court looked to the language of the statute and the method by which it was applied to determine its legal incidence. The Court reviewed the statute and concluded that the motor fuel tax was legally imposed on the retailer rather than on the distributor or the consumer. 515 U.S. at 461.
Not surprisingly, in this case both the State and Retailers claim reliance on Chickasaw.
The United States Congress, in admitting Kansas into the Union in 1861 through the Act for Admission of Kansas into the Union, January 29, 1861, ch. 20, § 1, 12 Stat. 126, viewed the Indian tribes of Kansas not as agents of the federal government, but as distinct entities, because, logically, no government would need to make a treaty with its own agents. See The Kansas Indians, 72 U.S. (5 Wall.) at 756-57.
Under the circumstances, there has been no showing by Retailers that payment of fuel tax to Kansas interferes with the selfgovernment of a Kansas tribe or a Kansas tribal member or the tax impairs a specific right granted or reserved by federal law to the Kansas Indians. Here, the legal incidence of the tax on motor fuel rests on nontribal members and does not affect the Potawatomi Indian reservation within the state of Kansas or the members of *478 that tribe. Retailers have no protected interest that is threatened by the State. Because there was no act that threatened or violated Retailers' rights, the district court properly denied the request for an injunction and a restraining order.
Affirmed.