The Honorable Karin Brownlee State Senator, 23rd District 14725 S. Chalet Drive Olathe, Kansas 66062
The Honorable Nick Jordan State Senator, 10th District 7013 Albervan Shawnee, Kansas 66216
The Honorable Jim Barone State Senator, 13th District 611 L. Leighton Frontenac, Kansas 66763
The Honorable Kenny Wilk State Representative, 42nd District 715 Cottonwood Drive Lansing, Kansas 66043
The Honorable Lana Gordon State Representative, 52nd District 5820 S.W. 27th Street Topeka, Kansas 66614
Dear Senators Brownlee, Jordan, and Barone and Representatives Wilk and Gordon:
As State Legislators you request our opinion regarding whether monies raised through sales tax and revenue (STAR) bonds may be used to pay costs of personal, as well as real, property. Although you ask about "personal property as defined by the Kansas Tax Code," the proper analysis regarding the meaning of "property" is pursuant to the Development and Redevelopment of Areas in and Around Cities Act,[1] commonly known as the Tax Increment Finance (TIF) Act, which was the funding mechanism for STAR bonds.
As we discussed in Attorney General Opinion No. 2004-6, the legislatively stated purpose for the enactment of the TIF Act is to "promote, stimulate and develop the general and economic welfare of the state of Kansas and its communities and to assist in the development and redevelopment of eligible areas within and without a city thereby promoting the general welfare of the citizens of this state. . . ."[2]
The redevelopment is pursued by a city through a two-step process, with the first step being establishment of a redevelopment district within an eligible area.[3] Once the redevelopment district has been established, the city's governing body may adopt an ordinance that sets forth the redevelopment district plan.[4] The "`[r]edevelopment district plan' or `district plan' [is] the preliminary plan that identifies all of the proposed redevelopment project areas and identifies in a general manner all of the buildings, facilities and improvements in each that are proposed to be constructed or improved in each redevelopment project area."[5]
A city is authorized "to issue special obligation bonds in one or more series to finance the undertaking of any redevelopment project. . . ."[6]
The proceeds of the special obligation bonds may be used to pay for redevelopment project costs.[7]
 "`Redevelopment project costs' means those costs necessary to implement a redevelopment plan, including, but not limited to costs incurred for:
 "(1) Acquisition of property within the redevelopment project area;
"(2) payment of relocation assistance;
"(3) site preparation including utility relocations;
"(4) sanitary and storm sewers and lift stations;
 "(5) drainage conduits, channels, levees and river walk canal facilities;
 "(6) street grading, paving, graveling, macadamizing, curbing, guttering and surfacing;
"(7) street light fixtures, connection and facilities;
 "(8) underground gas, water, heating and electrical services and connections located within the public right-of-way;
"(9) sidewalks and pedestrian underpasses or overpasses;
 "(10) drives and driveway approaches located within the public right-of-way;
"(11) water mains and extensions;
"(12) plazas and arcades;
"(13) parking facilities;
 "(14) landscaping and plantings, fountains, shelters, benches, sculptures, lighting, decorations and similar amenities; and
 "(15) all related expenses to redevelop and finance the redevelopment project."[8]
Since this statute was enacted,[9] redevelopment project costs have not included those incurred in connection with the construction of buildings or other structures to be owned by or leased to a developer.[10] Additionally, since June 3, 2004, the proceeds of special obligation bonds have been specifically precluded from use to finance personal property.[11] On that date 2004 House Substitute for Senate Bill No. 395 became effective, prohibiting proceeds from TIF bonds from being used to finance personal property.
As you point out, "personal property" is not included in the statutory list of permissible costs. However, since the list is preceded by the words "including but not limited to," the longstanding statutory construction maxim of expressio unius est exclusio alterius (the mention of one thing implies the exclusion of other things not mentioned) is not applicable. Instead, we turn to the statutory construction canon regarding determination of legislative intent:
 "A fundamental rule of statutory construction, to which all other rules are subordinate, is that the intent of the legislature governs if that intent can be ascertained. When a statute is plain and unambiguous, appellate courts will neither speculate as to legislative intent nor read a statute so as to add something not readily found in it. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. Legislative intent may best be determined from the plain meaning of the words used in the statute in light of all the experience available to the law-making body. Our construction should neither add to that which is not readily found in the statute, nor read out what, as a matter of ordinary language, is in it.
 "In addition, there are many cases which indicate that when the language of a statute is plain and unambiguous, we are to give effect to the intention of the legislature as shown by that language rather than to determine what the law should or should not be. Indeed, before we can even undertake the task of construing and interpreting a statute, we must conclude the statute is ambiguous. If it is not ambiguous, we must take the language of the statute to mean what it says, and no construction is necessary." [12]
In our opinion, the word "property" as used in K.S.A. 2003 12-1770a(q) is unambiguous, and thus we are not at liberty to either expand or limit its plain meaning. The plain meaning of the word "property" is established by K.S.A. 2003 Supp. 77-201 Tenth, within the Kansas Statutory Construction Act,[13] as "includ[ing] personal and real property." The rules of statutory construction found in that Act "shall be observed, unless the construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute."[14] As the case quoted above makes clear, the "manifest intent of the legislature" is reflected by the words used in a statute, which if plain and unambiguous mean what they say. We also do not find discerning the word "property" to include personal as well as real property to be repugnant to the TIF Act which clearly allows redevelopment project costs to cover "those costs necessary to implement a redevelopment plan."[15]
Since the TIF statute speaks in terms of costs for "acquisition of property" "necessary to implement a redevelopment plan," based on principles of statutory construction, we find no legal basis to interpret the word "property" as used in the TIF Act as meaning only "real property." Thus, in our opinion, until June 3, 2004, the word "property" as used in the TIF Act included both personal and real property.
Additionally, when the Legislature revises an existing law, it is presumed that the Legislature intended to change the law as it existed prior to the amendment.[16] As mentioned, beginning June 3, 2004 a statutory limitation came into effect that now precludes TIF proceeds from being used to finance personal property. We must assume that this indicates a change in the law from that which formerly existed. In our opinion, prior to that date TIF proceeds were legally available to finance both real and personal property necessary to implement a redevelopment plan. As of June 3, 2004 TIF proceeds became legally available to finance only real property.
Sincerely,
 PHILL KLINE Attorney General
 Camille Nohe Assistant Attorney General
PK:JLM:CN:jm
[1] K.S.A. 12-1770 et seq.
[2] K.S.A. 12-1770.
[3] K.S.A. 12-1771, as amended by L. 2004, Ch. 183, § 1.
[4] K.S.A. 12-1771(b), as amended by L. 2004, Ch. 183, § 1; 12-1772.
[5] K.S.A. 2003 Supp. 12-1770a(s), as amended by L. 2004, Ch. 173, § 5. See also K.S.A. 12-1771(b), as amended by L. 2004, Ch. 183, § 1.
[6] K.S.A. 2003 Supp. 12-1774(a)(1), as amended by L. 2004, Ch. 183, § 4.
[7] K.S.A. 12-1773(b), as amended by L. 2004, Ch. 183, § 3.
[8] K.S.A. 2003 Supp. 12-1770a(q) (emphasis added).
[9] L. 1999, Ch. 83, § 1.
[10] Attorney General Opinion No. 2004-6 addressed this provision of the TIF Act.
[11] K.S.A. 2003 Supp. 12-1774, as amended by L. 2004, Ch. 183, § 4 (effective June 3, 2004 following publication in the Kansas Register).
[12] State v. Gunn, 29 Kan. App. 2d 337, 349 (2001) (internal citations omitted).
[13] K.S.A. 2003 Supp. 77-201et seq.
[14] K.S.A. 2003 Supp. 77-201.
[15] K.S.A. 12-1770a(q),
[16] Kaul v. State Dept. of Revenue, 266 Kan. 464, 471 (1998).