No. 19,152.

LEWIS LINDSAY DYCHE, *Plaintiff,* v. W. E. DAVIS, as
State Auditor, etc., *Defendant.*

SYLLABUS BY THE COURT.

1. UNIVERSITY EXTENSION WORK—*Fish and Game Department
   —Statutes and Official Proceedings Relating Thereto.* Pro-
   ceedings of the governing boards of the University of Kansas
   and official acts of the governor relating to the fish and game
   department contemplating an extension of University work
   to that department are recognized and made effective by
   statutes and appropriations. The proceedings, acts, statutes,
   and appropriations referred to are stated in the opinion.

2. TWO OFFICES—*May be Held by One Person.* The common
   law does not prevent one person from holding two offices pro-
   vided the duties of neither one are incompatible with the duties
   of the other.

3. SAME—*Entitled to Compensation for Each.* In the absence
   of constitutional or statutory restrictions the incumbent of
   two offices, which he may rightfully hold, is entitled to the
   compensation provided by law for each. The same rule is
   applicable when a person holding a state office is also a pro-
   fessor in the State University.

4. SAME—*When Two Offices Are Incompatible.* Offices are in-
   compatible when the performance of the duties of one inter-
   feres in some way with the duties of the other and there is an
   inconsistency in the functions of the two offices. It is diffi-
   cult to define with precision this incompatibility. The question
   must be determined upon the facts of each case.

5. SAME—*Fish and Game Warden—Professor of Systematic Zo-
   ology, etc., in State University—Same Person May Draw
   Both Salaries.* The duties of the fish and game warden are
   not incompatible or inconsistent with the duties required by
   the board of administration of the professor of systematic zo-
   ology and taxidermy and curator of birds, mammals and
   fishes in the State University, and the person holding both
   positions may lawfully draw the salary provided by law for
   each.

Original proceeding in mandamus. Opinion filed
July 7, 1914. Writ allowed.

*John S. Dawson,* attorney-general, for the plaintiff.
*James M. Nation,* of Erie, for the defendant.

The opinion of the court was delivered by

BENSON, J.: This action is to determine whether the plaintiff's salary as a professor in the University of Kansas shall be audited and paid after the payment of his salary as fish and game warden for the same period.

For thirty-five years Professor Dyche has been a member of the faculty of the University. During that time he has been professor of zoölogy, professor of comparative anatomy, curator of birds, mammals and fishes, and professor of systematic zoölogy and taxidermy, and now holds the position of professor of systematic zoölogy and taxidermy and curator of birds, mammals and fishes. The legislature of 1909 inadvertently failed to make an appropriation for the fish and game department and the management of the state hatchery. Governor Stubbs, conceiving the idea of associating the management of this hatchery with the University, took up the proposition with the board of regents, requesting them to take an interest in this hatchery and in the fish and game department as part of the university extension work. This was done, and the board passed a resolution on November 30, 1909, as follows:

"On account of the lack of appropriations for the fish and game wardenship and of its great importance to the state, and further because of the desire and duty of the University to do everything in its power for the commonwealth whose name it bears, the regents of the University of Kansas hereby offer the services of Professor Lewis Lindsay Dyche as fish and game warden for so much of his time as may be necessary to place the fish hatchery and the entire work connected with the position on a thoroughly scientific and economic basis, believing that it may be made of great economic importance to Kansas."

Dyche v. Davis.

The governor then appointed Professor Dyche fish and game warden, and his appointment was confirmed. Down to the time he took this position he had been receiving $2500 a year. The board of regents in consideration of the connection of the game department with the university extension work raised his salary to $3000 per year. During this time he received no other pay.

On July 1, 1913, the board of administration entered upon its duties, but no change was made in the status of plaintiff. He continued to discharge the duties of fish and game warden and also of his professorship until the 5th of November, 1913, during which time he drew no pay. On the 5th of November, 1913, the board of administration concluded that for the present fiscal biennium it would better serve the convenience of the board if Professor Dyche drew the salary of fish and game warden at the rate of two thousand dollars a year, and that his salary as professor should be reduced from three thousand dollars to one thousand dollars per year, and that he should discharge the duties of both. To that end the following resolution was adopted:

"Passed by the Board of Administration, November 5, 1913.

"Be it resolved by the board of administration that Professor L. L. Dyche, the State Fish and Game Warden, be employed as Professor of Systematic Zoölogy and Curator of Mammals, Birds and Fishes, in the University of Kansas; and that in consideration of his delivering such lectures as he may be called upon to deliver by the department of zoölogy, and furnishing such laboratory material as may be necessary for the use of said department, and keeping up and looking after the museum of said institution, that he be allowed a salary in addition to his salary as Fish and Game Warden, to be paid by the state, of $1000 for the fiscal year beginning July 1, 1913, and ending July 1, 1914."

The governor and auditor knew of this arrangement and knew that the plaintiff was to receive his com-

pensation out of two different appropriations. The governor approved and the plaintiff acquiesced in this arrangement and filed with the auditor of state two vouchers, the first one for salary for July, August, September and October, as professor at the University, at the rate of $1000 per year, and the other for salary as fish and game warden for July, August, September and October, at $166.66⅔ a month, a total of $666.66.

The defendant audited the voucher for salary as fish and game warden, but refused to audit the claim for salary as professor. The plaintiff complains of this refusal and prays for a writ of mandamus to compel the audit.

The auditor in his answer alleges that the duties of the fish and game warden are independent of, and incompatible with, the duties of a professor in the University, and that it was the legislative intention that Professor Dyche should devote all his time to the duties of the office. He also alleges a public policy and custom against the payment of two salaries to one person, and refers to various statutes in which particular officers are precluded from receiving other compensation than that named. Instances are cited where members of the legislature holding another office have drawn but one salary. The auditor also alleges that the plaintiff did not perform any service as professor during the time for which he claimed pay.

It will be observed that the governor and the governing boards of the University acted in harmony in relation to the services of Professor Dyche in the office of fish and game warden, and in the University, treating his service as warden as a part of university extension work. The subject was referred to in the biennial message of the governor in January, 1911, and in a special message to the legislature in the same month. The failure of the legislature to make an appropriation for the salary of fish and game warden for the year 1909 was referred to and Professor Dyche's services were

highly commended.   In the special message the governor said:

"Under an arrangement made with the State University, Mr. Lewis Lindsay Dyche, professor of zoology and curator of birds, mammals and fishes of that institution, was made fish and game warden, and has not received any salary from the fish and game department.   Professor Dyche, after much consideration of this subject, consented to accept the appointment of fish and game warden, under the express condition that the department should be entirely removed from political control and placed upon a scientific business basis.   .   .   .   The fish and game department can be developed into an industry which will produce many millions of dollars' worth of food every year for the people of Kansas if it is removed entirely from politics and put on a scientific basis."

In the legislative session of that year the laws on the general subject of fish and game were revised (Laws 1911, ch. 198), fixing the salary of the warden at $2000, and providing that "The fish and game warden shall be under the supervision of the regents of the University of Kansas."   (§ 1.)   This clause is significant of a purpose to give effect to the recommendations of the governor.

At the same session the legislature appropriated so much as might be found necessary out of the fish and game warden's fund to extend and improve the state hatchery and also made appropriations for the warden's salary.   (Laws 1911, ch. 6.)   Preliminary to this legislation in 1911, committees of the legislature considered plans for large extensions in the hatchery, presented by the warden.   (First Biennial Report, Fish and Game Warden, p. 9.)   Appropriations were made at the legislative session of 1913 for general maintenance of the University, including, among other things, salaries and extension for the fiscal years ending June 30, 1914, and 1915.   Appropriations of $25,000 for each of the years were also made "For state work (separate) including scientific surveys, salaries and maintenance

of water, food and drug laboratories for the State Board of Health, sanitary engineering for State Board of Health, industrial research, fish and game, entomology, weights, measures, weather reports and other service work." (Laws 1913, ch. 5, § 2.)

These various acts and proceedings show legislative recognition of the extension of the University work, as contemplated by the action of the governor and University authorities to the subject of fish and game, and of the services of Professor Dyche, which being matters of official record as well as current history, were well known to the legislature. While the appropriation act of 1913, just referred to, does not give express direction for the payment of the plaintiff's salary as professor, the general authority is given by the power conferred upon the board to approve vouchers, and upon the auditor to draw warrants for that purpose.

The various acts referred to by counsel which in express terms forbid other compensation than the salaries prescribed are interpreted by the auditor as declaratory of a public policy against payment of more than one salary to the same person for the same time. An appropriation for the salary of the secretary of the State Board of Health, provided he receive no other salary from the state, is one of the acts referred to. On the other hand, the attorney-general argues that these express prohibitions, by implication, recognize a general rule to the contrary. He also refers to other statutes permitting one person to hold two offices, allowing compensation for both, giving as an example the act making the county attorney *ex officio* divorce proctor, and allowing compensation for services in that office in addition to his regular salary as county attorney.

Turning from these enactments, which afford but little aid to our present inquiry, it is found that the common law does not prevent one person from holding two offices, provided that the duties of neither one are

Dyche v. Davis.

incompatible with the duties of the other. (Throop on Public Offices, 30; *Abry v. Gray,* 58 Kan. 148, 48 Pac. 577.)

The auditor does not say, however, that it is against the law or public policy to hold two offices, but contends that it is against public policy for one man to draw the salaries of two offices.

In the absence of constitutional or statutory restrictions, the incumbent of two offices which he may rightfully hold is entitled to the compensation provided by law for each. (Mechem's Public Offices and Officers, § 859; 29 Cyc. 1424; *United States v. Saunders,* 120 U. S. 126; *Cornell v. Irvine,* 56 Neb. 657, 77 N. W. 114; *State, ex rel. Chatterton, v. Grant,* 12 Wyo. 1, 73 Pac. 470, 2 Ann. Cas. 382, and Note.)

This principle is not disputed, but the auditor distinguishes this case by the fact that a professor in the University is not a public officer. While that is true, his compensation is fixed by public authority and is made payable out of public funds, and the principle is applicable. (*United States v. Saunders,* supra.)

Offices are incompatible when the performance of the duties of one in some way interferes with the performance of the duties of the other. This is something more than a physical impossibility to discharge the duties of both offices at the same time. It is an inconsistency in the functions of the two offices. It is difficult to give a definition which will have universal application. The distinction is best determined by an examination of the cases which have been held to fall on one side or the other of the line of cleavage. Many of these cases are collated in a note in 2 Ann. Cas. 380. In the Abry case this court held that the offices of clerk of the district court and city clerk were not incompatible so that by accepting one the other would be vacated. In *Cornell v. Irvine,* supra, it was held that the duties of a commissioner of the supreme court of Nebraska were

62 — 92 KAN

not incompatible with the duties of a lecturer at the State University, and that the commissioner who had received his salary in full was also entitled to the compensation allowed him as a lecturer. That case is quite similar to this one, and the opinion is very valuable, reviewing several other decisions.

No incompatibility is discovered between the duties of fish and game warden and professor of systematic zoölogy and taxidermy and curator of birds, mammals and fishes. Indeed, Professor Dyche's long study, research and experience in the subjects included in his professorship were considered by the chancellor and regents of the University and the governor as fitting him especially for the highly important duties of fish and game warden and the problems to be solved in the extension of the state hatchery. Instead of being inconsistent or incompatible, duties performed and experience gained in one station would enable the incumbent the more intelligently and effectually to do the duties of the other. We believe that the legislature agreed with the executive and the University board in this view.

To the objection that no services were rendered to the University during the months of July, August, September and October, the period for which the voucher was presented, it should be observed that the greater part of this time was in the vacation interval of the scholastic year. The dates of Professor Dyche's lectures must necessarily be prescribed by the University authorities, and the circumstance that he did not lecture in September or October is not regarded as important. The presumption is that he will during the year perform all the services his employment requires, as the chancellor and board shall direct. The question whether it is within the official duty of the auditor to inquire whether, or in what manner, the services were performed was discussed, but it is not necessary to decide it.

It is concluded that there is no rule of public policy that will prevent the state from receiving the plaintiff's

services as fish and game warden, and also as a professor in the University, and paying his compensation from the direct appropriation made for his salary as warden, and from the amount provided by the board of administration for his salary as professor.

The motion for judgment will be sustained and the peremptory writ allowed as prayed for.