No. 56,271

BOARD OF COUNTY COMMISSIONERS OF NEOSHO COUNTY *ex rel.*, BOARD OF TRUSTEES, NEOSHO MEMORIAL HOSPITAL, *Appellees*, v. CENTRAL AIR CONDITIONING COMPANY, INC., *et al., Appellants.*

(683 P.2d 1282)

Opinion filed July 13, 1984.

*Stewart L. Entz*, of Colmery, McClure, Letourneau, Entz & Merriam, P.A., of Topeka, argued the cause and was on the brief for appellants.

*Louis F. Eisenbarth* and *Ruth E. Graham*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause and were on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by B. B. Andersen Construction Company, Inc. (Andersen), the general contractor on a construction project, from an order of the Neosho County District Court confirming an arbitrators' award. The appellee is the Board of County Commissioners of Neosho County, Kansas, acting for and on relation of the Board of Trustees of the Neosho Memorial Hospital. The issue to be determined is whether the death of one of three neutral arbitrators, after the conclusion of evidentiary

hearings but before closing arguments and deliberations, destroyed the panel's power to make a valid award.

The parties are in substantial agreement as to the facts. A dispute arose between the hospital, the general contractor (Andersen), and the architect during the progress of a construction and remodeling project. The hospital had separate contracts with the contractor and the architect, both of which contained arbitration clauses. Since the parties could not or did not settle their differences, this action was commenced. The district court compelled the parties to arbitrate. The parties eventually selected a panel of three neutral arbitrators—Herbert A. Marshall of Topeka and A. J. Wachter of Pittsburg, both lawyers, and Max Snodgrass, a Wichita contractor—from lists of proposed arbitrators supplied by the American Arbitration Association. The parties and the arbitrators proceeded with and participated in thirty-four days of hearings, from February 1982 to January 1983. We are advised that a number of lay and expert witnesses testified; the record consists of some thirty-five volumes of transcripts plus depositions, and over 1,000 exhibits; and the cost of the arbitration proceedings to one of the parties alone is in the neighborhood of $300,000. In January 1983 the record was closed, and closing arguments were scheduled in early March. Unfortunately, arbitrator Max Snodgrass died on March 1, before closing arguments and deliberations. Andersen objected to a continuation of the arbitration. It filed suit in Shawnee County District Court for the appointment of a substitute arbitrator, for the appointment of an entirely new panel of arbitrators, or for an injunction. That court refused to exercise jurisdiction in view of the pending Neosho County action. Closing arguments were then made to the two remaining arbitrators. Briefs were submitted and the two remaining members of the panel reached their decision. The award favored the hospital. Andersen filed a motion to vacate the award, pursuant to K.S.A. 5-412 and 5-415, and the hospital filed a motion to approve the award of the arbitrators. After hearing, the trial court denied the motion to vacate and confirmed the award. Andersen appeals. The architect did not challenge the award of the arbitrators and is not a party to this appeal.

The contract between the hospital and Andersen contained the following provision relating to arbitration:

"7.10 ARBITRATION

"7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

The Construction Industry Arbitration Rules of the American Arbitration Association read in part as follows:

"Section 20. VACANCIES—If any arbitrator should resign, die, withdraw, refuse, be disqualified or be unable to perform the duties of office, the AAA shall, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provision of these Rules. In the event of a vacancy in a panel of neutral arbitrators, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise."

K.S.A. 5-405, a part of the Kansas Uniform Arbitration Act, reads in part as follows:

"(c) The hearing shall be conducted by all the arbitrators but a majority may determine any question and render a final award. If, during the course of the hearing, an arbitrator for any reason ceases to act, the remaining arbitrator or arbitrators appointed to act as neutrals may continue with the hearing and determination of the controversy."

The parties are in agreement that the arbitration panel with which we are here concerned was made up of neutral arbitrators, persons selected from lists of proposed arbitrators supplied by the American Arbitration Association. The parties did not each appoint an arbitrator, with the selection of an additional arbitrator or arbitrators left up to those so appointed; the three neutral arbitrators constituted the panel agreed upon by the parties.

Section 20 of the Construction Industry Arbitration Rules became part of the agreement between the contracting parties. That section specifically authorizes the remaining arbitrator or arbitrators to continue the hearing in the event of a vacancy in the panel, *unless the parties agree otherwise.* In this case, the parties did not agree otherwise, and the two remaining neutral arbitrators continued with the matter and determined the controversy. The parties here had agreed by their contract that if any one or two of the neutral arbitrators resigned, died, withdrew, or was otherwise unable to continue with the performance of his

duties, the remaining neutral arbitrator or arbitrators could continue with the hearing and determine the controversy.

The trial court's decision was based solely upon the application of section 20 to this case. Andersen argues that section 20 is ambiguous because it states that "[v]acancies shall be filled in accordance with the applicable provision of these Rules," but that there are no applicable provisions of the rules. We do not agree that the rule is ambiguous. Other rules do provide for the appointment of arbitrators, but there was no necessity for the appointment of a successor arbitrator when the parties had already agreed that the surviving panel members could continue and determine the controversy, and the panel members elected to continue. If the parties had *agreed*, for example, that the remaining arbitrators not continue, and that the vacancy be filled or that an entirely new panel be appointed, then the rules provided the method by which such appointments should be made. Absent such an agreement, the original agreement of the parties controls, and the trial court was correct in determining that the two remaining arbitrators had the power to do what they did in this case.

Andersen argues that on the adoption of the Uniform Arbitration Act, K.S.A. 5-401 *et seq.*, the State of Kansas did not reject the common law principles generally pertaining to the arbitration process and specifically pertaining to the power and authority of an arbitration panel upon the death of one of its members. The common law rule was that if a member of a board of arbitrators died prior to the conclusion of the hearings in front of the board and before the arbitrators had an opportunity to consult with each other, then the remaining board members had no authority to continue hearings and render an award. See 5 Am. Jur. 2d, Arbitration and Award § 95. That rule applied to all boards of arbitrators. The Kansas statute, however, specifically provides that where an arbitrator ceases to act, the remaining *neutral* arbitrators "may continue with the hearing and determination of the controversy." That statute, as far as applicable, clearly modifies the common law rule. We need not here decide what happens under Kansas law when the panel consists of non-neutral arbitrators.

Professor Fowks, in his article, *The Uniform Arbitration Act: The Kansas Version*, 43 J.K.B.A. 9 (1974), at pages 12 and 13, states:

"The Kansas Act omits the Uniform Arbitration Act provision which states that all acts or parts of acts which are inconsistent with it are repealed. Through this omission and the failure of Kansas Legislature to repeal K.S.A. § 5-201 et seq. arbitration in Kansas can be conducted pursuant to common law rules or K.S.A. § 5-201 et seq., or the newly adopted Kansas Uniform Arbitration Act, K.S.A. (Supp. 1973) § 5-401 to 5-422."

Professor Fowks also notes, on pages 9 and 10, certain classifications and exceptions included within the Kansas Act, and concludes:

"Thus worded, the Kansas Act is self-limiting and where it is not applicable the common law rules would seem to apply."

Justice Burch, in *Clark v. Allaman,* 71 Kan. 206, 80 Pac. 571 (1905), carefully traces the history of the applicability of the common law within the territory which is now Kansas, from the time of its acquisition by the United States up to the time of the opinion. He concludes that the common law was prevalent throughout the area now comprising Kansas under every form of governmental organization from the earliest times until the autumn of 1868, when General Statutes of 1868, chapter 119, section 3, became effective. That section now appears as K.S.A. 77-109, which reads as follows:

"*Common Law.* The common law *as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people,* shall remain in force in aid of the General Statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state, but all such statutes shall be liberally construed to promote their object." (Emphasis supplied.)

When a statute conflicts with the common law, the statute, of course, controls. K.S.A. 77-109, itself, modifies the common law rule "that statutes in derogation thereof shall be strictly construed," and, under that statute, the specific common law rule there targeted no longer is applicable in this state. Similarly, K.S.A. 5-405(*c*) authorizes remaining neutral arbitrators to "continue with the hearing and determination of the controversy." Thus, since the applicable statute varies from and modifies the common law, it controls.

Discussing the power of the legislature to modify and change common law rules, this court in *Williams v. City of Wichita,* 190 Kan. 317, 374 P.2d 578 (1962), said:

"From the earliest days of Kansas history, flexibility in the common law has been

carefully preserved (G.S. 1949, 77-109). Indeed, the great office of statutes is to remedy defects in the common law as they are developed and to adapt it to the changes of time and circumstances. That the legislature may change the principle of the common law and abrogate decisions made thereunder when in its opinion it is necessary to the public interest is well settled (*O'Neil v. North'n Colorado Irrigation Co.,* 242 U.S. 20, 26, 27, 61 L.Ed. 123, 37 S.Ct. 7; *Silver v. Silver,* 280 U.S. 117, 74 L.Ed. 221, 50 S.Ct. 57; *Komorowski v. Boston Store of Chicago,* 341 Ill. 126, 173 N.E. 189; *Katz v. Walkinshaw,* 141 Cal. 116, 74 Pac. 766; *Power Co. v. Cement Co.,* 295 U.S. 142, 79 L.Ed. 1356, 55 S.Ct. 725; *U.S. v. Gerlach Live Stock Co.,* 339 U.S. 725, 94 L.Ed. 1231, 70 S.Ct. 955, 20 A.L.R.2d 633; *State, ex rel., v. Knapp,* 167 Kan. 546, 207 P.2d 440)." 190 Kan. at 331-32.

We hold that insofar as K.S.A. 5-405(*c*) is concerned, that section of the statute modifies the common law rule pertaining to the power and authority of an arbitration panel under the limited circumstances set forth and described in the statute.

Andersen also contends that this court should vacate the award for the reason that the deceased arbitrator was the only contractor panel member. There is no dispute, however, but that the three panel members were all neutral arbitrators. If Andersen had an objection to the competence of a neutral panel member, it should have voiced its objection at the time the panel members were selected, not after arbitration had proceeded.

We hold that under the specific contractual provision of the arbitration agreement between the parties to this action, under the Construction Industry Arbitration Rules of the American Arbitration Association set forth above, and under the applicable Kansas statute, K.S.A. 5-405(*c*), the two surviving members of the neutral arbitration panel did not lose their power and authority to render a valid award upon the death of arbitrator Snodgrass. The parties to the contract got precisely what they bargained for.

The judgment of the trial court is affirmed.

HOLMES, J., not participating.