No. 83,805

UNIFIED SCHOOL DISTRICT NO. 501, SHAWNEE COUNTY, KANSAS; and THE BOARD OF EDUCATION OF U.S.D. NO. 501, SHAWNEE COUNTY, KANSAS: CAROLYN L. CAMPBELL, President, MARK S. BRAUN, RON BROWNING, TIM S. CLOTHIER, BRUCE E. MALLORY and BEN J. SCOTT, SR., in their official capacities as members of the Board of Education of United School District No. 501, *Appellants,* v. LINDA MARIE BAKER, *Appellee.*

(6 P.3d 848)

Opinion filed May 26, 2000.

*Cynthia Lutz Kelly,* of Kansas Association of School Boards, of Topeka, argued the cause and was on the brief for appellants.

*David M. Schauner,* of Kansas National Education Association, argued the cause, and *Ryan D. Hickman,* of the same association, was with him on the brief for appellee.

The opinion of the court was delivered by

Six, J.: This K.S.A. 60-1701 *et seq.* declaratory judgment action addresses whether a tenured teacher while serving as a member on the school board that employs the teacher may hold both positions, teacher and board member. The controversy arises out of the election of Linda Marie Baker to the Unified School District No. 501 Board of Education (Board). Baker is a tenured teacher in the Shawnee County School District (U.S.D. 501). She was elected to the Board in 1999. The Board questions: (1) whether Baker may hold both positions as teacher and board member; and (2) if so, whether either Kansas law or Board policy permit payment of Baker's teaching salary while she serves on the Board. The district court granted summary judgment, K.S.A. 60-256, to Baker, holding she may hold both positions and receive her salary as a teacher. The Board appeals.

Our jurisdiction is under K.S.A. 20-3018(c), a transfer on our motion.

In reversing the district court, we apply the common-law doctrine of incompatibility of office. The positions of teacher as employee and board member as employer are incompatible. Baker may not hold both positions as teacher and board member.

## FACTS

The facts are uncontested. Baker has been employed by U.S.D.

501 as a certified teacher since 1984. The Board is the school district's duly authorized governing body. K.S.A. 72-7901. The Board is composed of seven members. The term of service is 4 years. K.S.A. 72-7901. Baker assumed her duties as a board member on July 1, 1999. She continues to serve pending the outcome of this litigation.

## DISCUSSION

We initially set out the Board's argument and the district court's rationale for rejecting it. The Board contends that holding both positions violates Kansas statutes and the common-law doctrine of incompatibility of office. Alternatively, the Board asserts that if Baker may hold both positions, K.S.A. 72-8202e and Board Policy 1050 prevent Baker from receiving her teaching salary. K.S.A. 72-8202e provides in part: "No member of a board of education shall receive compensation from the school district for any work or duties performed by him." Board Policy 1050 says: "[B]oard members of the Unified School District No. 501 shall not receive compensation for services rendered as an employee of the school district." Because our resolution of the Board's first contention is dispositive of the case, we need not reach the compensation issue.

The district court reasoned that: (1) while the legislature has specifically prohibited certain persons from serving as school board members, teachers are not among those persons, (2) the Board's claim of incompatibility of office is supplanted by legislative enactment, and (3) Board Policy 1050 is *ultra vires* and void as an impermissible attempt to delineate who is qualified to serve as a member of the Board.

The question before us is not a new one. The statutory enactments (K.S.A. 72-8202 *et seq.* and its predecessors) have never been clear on the subject. A lack of clarity prompted conflicting conclusions from two attorney generals expressed in four Attorney General (AG) opinions. Two Governmental Ethics Commission (GEC) opinions also addressed the issue. See Att'y Gen. Op. Nos. 75-52, 79-108, 79-301, and 91-15, GEC Op. Nos. 79-12 and 74-59.

The first AG opinion, 75-52, applying the common-law doctrine of incompatibility of office, concluded teachers may not serve on the employing school board and receive compensation as a teacher. The opinion states the "two positions are demonstrably incompatible." The second AG opinion, 79-108, issued 4 years later by a different attorney general, concluded no statutory provision prevented a school bus driver from serving on the board. The opinion concluded the incompatibility doctrine did not apply. A third opinion, 79-301, 6 months after 79-108, declared the positions of a watershed district board member and a paid district employee incompatible. The fourth opinion, 91-15, followed 79-108 declaring teachers and other board employees may serve on the board.

The GEC opinions addressed questions from (1) a school bus driver and (2) a teacher at a vocational school, both of whom also wished to serve on their local school boards. The Commission concluded there was no conflict of interest under K.S.A. 75-4304 and 75-4305 (prohibiting public officers from participating in the making of contracts with any person or business by which they are employed). Each GEC opinion noted its conclusion did not consider other common-law or statutory implications. We return to a discussion of the AG and GEC conclusions later in our opinion.

There has also been a great deal of proposed legislation on the subject. Bills attempting to place a prohibition on teachers serving as board members have been introduced frequently since the 1979 AG school bus driver opinion (79-108) 1981 (S.B. 114), 1982 (S.B. 114), 1983 (S.B. 79), 1984 (S.B. 79), 1985 (H.B. 2114), 1991 (S.B. 121), 1992 (S.B. 121), 1993 (H.B. 2338), 1994 (H.B. 2338), 1998 (H.B. 2808), and 1999 (S.B. 231; H.B. 2447). The Kansas Association of School Boards recommended the changes in response to AG Opinion 79-108 "based on the view that it is not good public policy to permit a person who is employed by a school district to also serve on the district's governing body—the board of education." Supplemental Note on Senate Bill No. 114, 1981 Legislative Session. None of the proposed amendments to K.S.A. 72-8202e has become law.

We now address the Board's assertion that because of K.S.A. 72-8202e and the common-law doctrine of incompatibility of office, Baker may not hold both positions.

K.S.A. 72-8202 *et seq.*

The legislature decides who may qualify for public office. See Kan. Const. art. 2, § 18 ("The legislature may provide for the election or appointment of all officers and the filling of all vacancies not otherwise provided for in this constitution.") If the legislature has spoken, the statement supersedes common law, and the doctrine of incompatibility of office does not apply. See K.S.A. 77-109; *Board of Neosho County Comm'rs v. Central Air Conditioning Co., Inc.*, 235 Kan. 977, 981, 683 P.2d 1282 (1984); *Abry v. Gray*, 58 Kan. 148, 48 Pac. 577 (1897) (applying common-law doctrine of incompatibility of office where no statutory or constitutional provision governed). Legislative exclusions of school board membership are found in K.S.A. 72-8202 *et seq.* Therefore, our statutory analysis begins with an examination of the statutes.

Interpretation of a statute is a question of law. Our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

The relevant statutes state in pertinent part:

"72-8202b. (a) The board of education of each school district shall appoint a superintendent of schools for a term of not more than three (3) years. . . . *No person employed under the authority of this section shall be a member of the board.* The superintendent, any assistant superintendents, supervisors and principals shall receive compensation fixed by the board." (Emphasis added.)

Similar statutory prohibitions on board membership apply to the clerk, K.S.A. 72-8202c, and the treasurer, K.S.A. 72-8202d. K.S.A. 72-8202e provides:

"In addition to the officers provided for in this act, the board of education of any school district may appoint other officers and employees to serve at the pleasure of the board. *Such officers and employees shall receive compensation fixed by the board. No member of a board of education shall receive compensation from the school district for any work or duties performed by him.*" (Emphasis added.)

The district court noted that the legislature in K.S.A. 72-8202b, -8202c, and -8202d specifically prohibited certain persons from holding Board positions (superintendent, assistant superintendents, supervisors, principals, treasurer, and clerk). The district court relied on the maxim *expressio unius est exclusio alterius* (the

legislature's failure to expressly list teachers among those who may *not* serve on the Board represents an intent that teachers may be board members). The district court construed the emphasized portion of 72-8202e to prohibit compensation to a board member only in his or her capacity as a board member. The Board disagrees. According to the Board, 72-8202e is clear and unambiguous. Baker's work as a teacher is within the statute's "any work" provision on compensation; thus, according to the Board, Baker cannot be paid as a teacher.

The district court has crafted a measured opinion. We agree with the conclusion that 72-8208e only prohibits compensation for "work or duties" performed as a board member. However, we believe the *expressio unius* doctrine, to express one category implies the exclusion of the other, is not applicable here. Baker does not serve "at the pleasure of the Board." She is a tenured teacher. As a tenured teacher, she is not the type of employee included in the 72-8202e category "other officers and employees to serve at the pleasure of the board." The *expressio unius* doctrine of construction contemplates the inclusion or exclusion of like categories. The doctrine arguably could be applied in a different fact situation, one in which the challenged Board member was either another "officer" or "employee" appointed under 72-8202e by the Board and serving at the Board's pleasure. See *Johnson v. General Motors Corporation*, 199 Kan. 720, 722, 433 P.2d 585 (1967).

Our incompatibility of office cases have not drawn an *expressio unius* inference. See *Abry*, 58 Kan. at 150 (legislature had, in a number of instances, prohibited certain offices to be filled by the same person; however, no statute specifically precluded same person from holding offices of city clerk and clerk of the district court, and no inference was drawn that legislature sought to permit serving in both positions); accord *Congdon v. Knapp*, 106 Kan. 206, 207, 187 P.2d 660 (1920); and *Dyche v. Davis*, 92 Kan. 971, 977, 142 Pac. 264 (1914). Instead, where no applicable statute was found authorizing the person to hold both offices, this court has consistently turned to the common-law doctrine of incompatibility of office.

Nothing in the language of K.S.A. 72-8202 *et seq.* indicates a legislative prohibition of teachers serving on school boards. The 72-8202e language stating no board member "shall receive compensation from the school district for any work or duties performed by him" raises only the question of compensation—not whether one may serve.

The district court also concluded the legislature expressly permitted teachers to serve on school boards by examining legislative changes to K.S.A. 72-8202e. It reasoned:

"The legislative history also supports the conclusion that the legislature did not intend to prohibit an employee from serving as a member of the school board. The 1935 General Statutes of Kansas stated: '72-1713. No member of the board of education shall receive any pay or emolument for his services.' In 1963, the statute was amended to state: 'the board shall appoint a clerk and treasurer, and other personnel as needed. Such clerk, treasurer, and other personnel shall not be board members and shall serve at the pleasure of the board.' Thus, in the 1963 version of the statute, the legislature clearly disqualified employees from being board members. However, the language which disqualified 'other personnel' was not included in the legislative revision made in 1973. When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. *Kaul v. State of Kansas Department of Revenue,* 266 Kan. 464, 471 (1998). Since the legislature repealed the clear prohibition against an employee serving as a board member, it must be presumed that they intended to repeal that prohibition."

The district court makes certain assumptions about the prior versions of K.S.A. 72-8202e in reaching its conclusion. The first is that "the legislature clearly disqualified employees from being board members" in the 1963 version of the statute. The Board agrees with this conclusion and now argues the 1963 wording is a clear articulation of the "State's long-standing position that board members could not be personnel of the school district." This conclusion is also questionable.

While it is true that the 1963 version disqualified "other personnel" from serving as board members, it is not clear that teachers are in that category of persons. Under the 1963 version, the "clerk, treasurer, and other personnel" are those appointed by the board to "serve at the pleasure of the board." See L. 1963, ch. 393, § 20. A complete reading of the 1963 version discloses that "other per-

sonnel" are staff who work directly for the Board rather than teachers, who would be hired, under Board policy, by the superintendent or the principal of each individual school. In addition, teachers at that time did not "serve at the pleasure of the board." Teachers were, and still are, except for a period of initial employment, tenured. See G.S. 1949, ch. 72, art. 54 (Tenure of Instructors Act). Tenured teachers could be discharged only for causes specified in G.S. 1949, 72-5406. See *Million v. Board of Education,* 181 Kan. 230, 231, 310 P.2d 917 (1957). Thus, teachers are not "other personnel" who were disqualified from Board service under the 1963 version of 72-8202e.

The 1963 version does not address the issue of whether teachers may serve on the Board. Examining the prior versions of K.S.A. 72-8202e does not reveal a legislative expression on the question of whether a teacher may serve on the Board. Nevertheless, both the Board and Baker infer a legislative expression from silence. Of course, each draws the opposite inference.

Contrary to the Board's assertions, where the legislature has not expressly precluded a group of persons from holding office, this court does not imply such a prohibition. See *Congdon,* 106 Kan. at 207; *Dyche,* 92 Kan. at 977; *Abry,* 55 Kan. at 150.

Baker agrees that the statutes do not expressly prohibit her from serving on the Board. However, she insists the absence of a prohibition amounts to a legislative authorization. We do not agree. See, *e.g., Dyche,* 92 Kan. at 977.

Baker also argues the legislature's failure to pass any of the proposed bills prohibiting teachers from serving as board members supports the status quo. (The status quo, according to Baker, permits teachers to serve on school boards.) We should observe legislative inaction with a gimlet eye. Legislative inaction is not necessarily indicative of legislative intent. See *Board of Leavenworth County Comm'rs. v. McGraw Fertilizer Serv., Inc.,* 261 Kan. 901, 916, 933 P.2d 698 (1997) (the court can draw many contradictory inferences from the legislature's failure to pass a bill); *Higgins v. Cardinal Manufacturing Co.,* 188 Kan. 11, 25, 360 P.2d 456, *cert. denied* 368 U.S. 829 (1961) (it is "highly speculative" to conclude legislature's failure to pass a bill on the subject at hand to be in-

dicative of legislative intent; legislature may have considered the legislation unnecessary in light of current state law).

Justice Allegrucci's dissent cites *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985), for the proposition that legislative inaction is indicative of legislative intent. *Ling* involved a negligence claim against Jan's Liquors for selling alcohol to a minor. (The minor's intoxication allegedly resulted in a car accident causing Ling's injury.) Relying on a legislative repeal and subsequent failure to reenact the dram shop law, this court held Jan's Liquors had no liability for Ling's damages. 237 Kan. at 640-41. We observe a clear legislative signal in *Ling* that is conspicuously absent here: *a legislative repeal and a subsequent refusal to reenact a law*. The legislature has never spoken on the issue of whether teachers may serve as board members. The event triggering the failed legislative amendments in this case was AG opinion 79-108—not the repeal of a statute; thus, we are unable to draw the inference drawn in *Ling*.

We cannot draw the inference of legislative authorization by silence. Nor can we then make suppositions about legislative inaction. Because the legislature has neither specifically authorized nor prohibited teachers from serving as members on an employing board, we must analyze the issue under the common-law doctrine of incompatibility of office.

### The Common-Law Doctrine of Incompatibility of Office

This court has uniformly turned to the common law in the absence of a specific legislative prohibition on dual office-holding. The first case discussing the common-law doctrine of incompatibility of office is *Abry v. Gray*, 58 Kan. 148. Gray held the office of Leavenworth city clerk. He was then elected clerk of the district court in Leavenworth County. Gray did not resign his post as city clerk, but rather continued to discharge the duties of both offices through deputies. The mayor and city council deemed the two offices incompatible, and Gray's acceptance of the latter an *ipso facto* resignation of the former. Abry was therefore appointed to the position of city clerk. However, Gray would not relinquish the post.

Finding no legislative or constitutional prohibition on Gray holding both posts, this court analyzed whether the two positions were incompatible at common law.

" 'The incompatibility which will operate to vacate the first office must be something more than the mere physical impossibility of the performance of the duties of the two offices by one person, and may be said to arise where the nature and duties of the two offices are such as to render it improper, from considerations of public policy, for one person to retain both.' " 58 Kan. at 149 (quoting 19 Am. & Eng. Enc. Law, 562w).

Abry argued that Gray could not hold both positions because of the physical impossibility of Gray being present at both posts. The *Abry* court pointed out that the focus of the common-law doctrine is not physical impossibility, but incompatibility of function. " 'Incompatibility between the two offices, is an inconsistency in the functions of the two; as judge and clerk of the same court—officer who presents his personal account subject to audit, and officer whose duty it is to audit it.' " 58 Kan. at 149 (quoting *People, ex rel. Ryan v. Green*, 58 N.Y. 304). The *Abry* court observed that while it may be bad policy to "confer two lucrative offices on the same person," because there was no incompatibility in the function of the two offices, Gray could retain both. See also *Congdon v. Knapp*, 106 Kan. at 207 (holding offices of assistant chief food and drug inspector and hotel commissioner not incompatible; therefore, holder may receive both salaries).

In *Gilbert v. Craddock*, 67 Kan. 346, 72 Pac. 869 (1903), this court took the next step, holding that when two offices are incompatible, election to the latter is a resignation of the former. *Gilbert* involved an action in quo warranto to determine whether a city councilman's election to the office of mayor was valid. *Gilbert* held that the councilman's acceptance of the incompatible office of mayor automatically resulted in a vacation of his position as councilman. 67 Kan. at 362-63.

A different question arose in *Dyche v. Davis*, 92 Kan. 971. *Dyche* addressed the question of incompatibility between a public office and a position as state employee. Dyche was a zoology professor at the University of Kansas. The governor appointed Dyche to the post of fish and game warden. Dyche was to receive compensation

for both positions. The state auditor refused to pay both salaries arguing incompatibility of office. The court first held that, although the case did not involve two public offices, the incompatibility principle applied. (The compensation for Dyche's nonpublic office was, as is Baker's, "fixed by public authority" and "made payable out of public funds." 92 Kan. at 977.) Comparing the functions of professor and warden, *Dyche* held that the positions were not incompatible, and the professor could draw both salaries. 92 Kan. at 978-79.

Here, the Board asserts that Baker's acceptance of her position on the Board resulted in an *ipso facto* forfeiture of her position as a teacher. Baker insists the incompatibility doctrine does not apply, citing AG Op. 79-108 (a bus driver was not precluded from running for and serving on his local school board).

Baker's reliance on Opinion 79-108 is misplaced. An attorney general opinion is neither conclusive nor binding on us. It may simply be cited for persuasive authority. See *City of Junction City v. Cadoret,* 263 Kan. 164, 173, 946 P.2d 1356 (1997); *Moore v. City of Lawrence,* 232 Kan. 353, 362, 654 P.2d 445 (1982). Opinion 79-108 is neither in harmony with our cases on common-law incompatibility nor with the other AG opinions on the issue. In addition, AG Op. 79-301 (discussing opinion 79-108) concludes *teachers,* as opposed to bus drivers, are among those whose positions are incompatible with board membership.

The incompatibility doctrine stands for the proposition that the same person may not hold two offices incompatible with each other as a matter of public policy. See *Abry,* 58 Kan. at 149 (stating doctrine applies " 'where the nature and duties of the two offices are such as to render it improper, from considerations of public policy, for one person to retain both' "). *Dyche* extended the incompatibility doctrine to include state positions such as professors of state universities. 92 Kan. at 977. Nothing in *Dyche* suggests a restriction of the incompatibility doctrine to situations involving two salaries. Whether a person draws a salary from both positions is not the focal point of the doctrine. The inquiry is a factual one of incompatibility based on public policy considerations.

Courts addressing the issue of a public office and public employment have reached the same conclusion. See *Otradovec v. City of Green Bay,* 118 Wis. 2d 393, 396, 347 N.W.2d 614 (Ct. App. 1984) ("The public detriment in having one person hold incompatible public offices can also exist when one person holds a public office and a position of public employment with duties that might conflict."); *cf. Reilly v. Ozzard,* 33 N.J. 529, 541, 166 A.2d 360 (1960) ("The question is whether the public evil which the doctrine of incompatibility was designed to meet is any less because of one of the posts is other than an 'office.'"). But see *Eldridge v. Sierra View Local Hospital Dist.,* 224 Cal. App. 3d 311, 319-20, 273 Cal. Rptr. 654, (1990) (holding incompatibility doctrine does not apply to nurse/hospital board situation because nurse is not an office, but an employment).

Other states considering the issue before us hold that the offices of teacher and board member are demonstrably incompatible. *Haskins v. State ex rel. Harrington,* 516 P. 2d 1171 (Wyo. 1973), addressed facts almost identical to those here. *Haskins* first analyzed whether the incompatibility doctrine could be applied in the teacher / school board member scenario. The Wyoming Supreme Court held it is the "incompatibility of the two functions and not the classification as office or an employment that is important." 516 P.2d at 1177 (citing *O'Connor v. Calandrillo,* 117 N.J. Super. 586, 285 A.2d 275, *aff'd* 121 N.J Super. 135, 296 A.2d 326 [1971]). In applying the incompatibility doctrine, *Haskins* concluded subordination is the key concept. *Haskins* observed that those courts analyzing the issue "uniformly declare that it is inimical to the public interest for one in public employment to be both the employer and the employee or the supervisor and the supervised." 516 P.2d at 1178. *Haskins* holds that the positions of schoolteacher and school trustee were incompatible within the meaning and intent of the common-law rule. We agree. See also *Thomas v. Dremmel,* 868 P.2d 263 (Wyo. 1994) (affirming the rule in *Haskins* and again holding the office of the board member incompatible with position of teacher).

*Visotcky v. City Council of Garfield,* 113 N.J. Super. 263, 267, 273 A.2d 597 (1971), reached the same conclusion. In *Visotcky,* a

teacher was appointed to fill a vacancy on the school board. The appointment was challenged and held invalid as an incompatible office.

As we focus on the agreed facts before us, the inescapable conclusion is that Baker's positions are incompatible. By assuming the role of teacher and Board member, Baker occupies one position that is subordinate to the other. As Board member she is the employer and as teacher, the employee. In her capacity as Board member she sits on a policy-making body that negotiates with the teachers' collective bargaining representative, who is also her representative as a teacher. This is a clear conflict of interest. Similarly, Baker is subject to discipline by the Board. She may, under certain circumstances, be fired by it. The principal who must evaluate Baker's performance as a teacher indirectly answers to Baker as a board member. As Baker discharges her Board duties, her actions, no matter how well-intentioned, will be colored by the conflict inherent in her two positions.

During questioning at oral argument Baker's counsel informed us that Baker had recused herself on negotiation issues. The Board's counsel responded that recusal is not a satisfactory resolution. Counsel noted that if Baker is allowed to serve, the other six Board positions could also be filled by teacher employees, if elected. The possibility of a multi-teacher board was noted in the *Haskins* concurring opinion.

"[I]f Haskins as a teacher could serve other teachers could also become members.

"If teachers constituted all or a majority of the members of the board of trustees the board could not transact any business dealing with teachers, including salary negotiations, because teacher members would have to absent themselves and there could be no majority action. If a school board could not set teachers' salaries and other contract terms it could not function. No reasonable argument could be made that the legislature intended to create a situation wherein a school board would be unable to perform its duties as the governing body of the school district." 516 P.2d at 1181 (McEwan, J. concurring).

The absence of a financial conflict of interest (Baker is not paid as a Board member) does not ameliorate the incompatibility at issue. The inherent conflicts here "would deprive the citizens of

the school district of the independent judgment of a full and impartial board." *Haskins*, 516 P.2d at 1179. As the *Haskins* court observed, the teacher may in all good faith and without thought of personal gain, attend to the independent performance of both positions. However, the fulfillment of one will invariably be at odds with the other, if not in reality, at least in perception. See *Haskins*, 516 P.2d at 1179. We agree.

Research reveals no case holding that the positions of teacher and school board member are compatible.

Both Baker and the district court acknowledge the potential conflicts of interest at issue here. Baker contends these policy questions should be taken to the legislature, and the district court agreed. In response, we emphasize the purpose of the incompatibility doctrine and acknowledge the common law as its source. In *Abry* there was neither a constitutional nor statutory inhibition against one person holding both offices at the same time. Thus, here, as in *Abry*, "[t]he case must be determined under the general rules of common law." 58 Kan. at 149.

The legislature holds the trump card to resolve the question before us today, either by specific authorization or prohibition. However, that card has not been played. Until it has, the common law, "as modified by . . . statutory law, judicial decisions . . . shall remain in force in aid of the General Statutes of this state." K.S.A. 77-109. We are obligated to apply the common-law doctrine of incompatibility of office in the absence of a specific legislative expression on dual office-holding.

A remaining question is whether the incompatibility doctrine produces a forfeiture of Baker's office on the Board or her position as teacher. Our case law suggests Baker's election to the Board operated as a resignation of her teaching position. See *Gilbert*, 67 Kan. at 362-63 (election to office of mayor vacated office of city councilman). However, a finding that Baker vacated her tenured teaching position seems inequitable here. A better approach is expressed by other jurisdictions addressing this issue. Both *Haskins* and *Visotcky* hold the teacher's contractual employment status precludes an *ipso facto* vacation of the teaching position. See *Visotcky*, 263 N.J. Super. at 267; *Haskins*, 516 P.2d at 1180. Because Baker

is contractually employed by the district, we hold that her employment as a teacher endures. She is disqualified from serving on the Board.

Reversed.

ALLEGRUCCI, J., dissenting: I agree with the rationale and decision of the district court in concluding that a teacher is not prohibited from serving on the school board.

As the majority notes, since 1979, 11 bills to prohibit teachers from serving on the school board have been introduced in the legislature and not one has passed. The majority chooses to ignore such inaction as indicative of legislative intent. The majority refuses to draw any inference from the legislature's inability to pass such legislation. In *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985), this court, in a different context, did just that. At issue in *Ling* was the liability of a provider of alcohol to a minor for the resulting injury caused by the minor to a third party. Under common law, one who provided the alcohol to a minor was not liable for the resulting injury. Kansas had a dram shop act, but the legislature repealed it in 1949. Since that time, the legislature had considered it but did not reenact it. This court said:

"Clearly, the legislature would have done so had it intended for there to be a civil cause of action. K.S.A. 41-715 prohibits the dispensing of intoxicating liquors to certain classes of persons and is a comprehensive act to *regulate* the manufacture, sale, and distribution of alcoholic liquors. The legislature did not intend for it to be interpreted to impose civil liability." 237 Kan. at 640.

Citing K.S.A. 77-109, we noted that "[t]he common law remains in force in this state where the constitution is silent or the legislature has failed to act." 237 Kan. at 640. In my view, the majority's attempt to distinguish *Ling* from the present case fails. The distinction alluded to by the majority is one without a difference. In *Ling*, it was the legislature's considering and refusing to enact a dram shop act which was indicative of legislative intent. The same is true here relative to prohibiting teachers from serving on the school board. The legislature's failure to pass any of the 11 bills introduced since 1979 speaks volumes on the issue of whether a teacher may serve on a school board.

As this court has noted on numerous occasions, the rule that statutes in derogation of common law should be strictly construed is not applicable in Kansas by reason of K.S.A. 77-109. Such statutes are to be liberally construed to carry out the intent of the legislature. The intent of the legislature is clear, and the common-law doctrine of incompatibility is made inapplicable by legislative enactment. As acknowledged by the majority, the legislature decides who may qualify for public office. It has done so, and I would affirm the district court.

LOCKETT, J., dissenting. Further, I join the dissent of Justice Allegrucci.

As Justice Allegrucci points out in his dissent, statutes are to be liberally construed to carry out the intent of the legislature. The legislature is presumed to have expressed its intent through the language of the statute. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

In reaching its conclusion that a school teacher is not prohibited by statute from serving as a member of the board of education of a school district, the district court was required to use the statutory rule of strict construction. That rule requires that ordinary words are to be given their ordinary meaning. The statute was not to be read to add that which is not readily found in the statute or to be read to take out what as a matter of ordinary English language is in the statute. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984).

The district court noted that the legislature specifically stated in K.S.A. 78-8202b, K.S.A. 78-8202c, and K.S.A. 78-8202d, that superintendents, assistant superintendents, supervisors, principals, board clerks, and board treasurers shall not be members of the board. The district court further noted that K.S.A. 72-8202e provides for the board of education to set the compensation for the officers provided for in the act or appointed by the board and then states that "[n]o member of a board of education shall receive compensation from the school district for any work or duties performed by him." The district court concluded that the statute clearly prohibits a member of the board of education from receiv-

ing compensation from the school district for any work or duties performed while acting in the capacity of a board member.

The majority disregards the rules of statutory interpretation and the action of the legislature to amend the statute, and then, under the guise of the common law, the majority rewrites the statute so that a member of the board of education cannot receive compensation from the school district for any work or duties contracted to perform for the school district. The majority's interpretation of the statute prohibits a member of the board of education from contracting to perform any work or service for or to sell any goods to the school district.