Ed H. Pavey, Director Kansas Law Enforcement Training Center P.O. Box 647 Hutchinson, Kansas 67504-0647
Dear Mr. Pavey:
You ask our opinion regarding the interpretation of the definition of "police officer" and "law enforcement officer" in the Kansas Law Enforcement Training Act (Act).[1] According to the Act, those who fall within the definition of "police officer" or "law enforcement officer" must complete the training requirements set forth in the Act. You indicate that there are differences of opinion concerning what persons fall within these definitions and are required to complete the required training.
Your first question is:
 "Does an employee of a city, county or state law enforcement agency who is not authorized to perform law enforcement duties fall within the definition of `police officer' or `law enforcement officer' under K.S.A. [2000 Supp.] 74-5602(e) when that employee works as an unpaid volunteer for the same agency during his or her off-duty hours as a reserve police or law enforcement officer and in the employee's volunteer capacity works to prevent or detect crime and enforce criminal or traffic laws?"
The Act defines "police officer" or "law enforcement officer" as follows:
 "`Police officer' or `law enforcement officer' means a full-time or part-time salaried officer or employee of the state, a county or a city, whose duties include the prevention or detection of crime and the enforcement of the criminal or traffic laws of this state or of any municipality thereof. . . ."[2]
The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the Legislature governs.[3] When a statute is plain and unambiguous, a court must give effect to the intent of the Legislature as expressed rather than determining what the law should or should not be.[4] If a statute is susceptible to multiple interpretations, the court may look at the historical background of the enactment, and the effect the statute may have under various constructions to determine legislative intent.[5]
There are no reported cases addressing the question you present and the meaning of the statute is not clear; therefore, we turn to the legislative history to determine the Legislature's intent. The language quoted above was enacted in 1973,[6] with the exception of the reference to part-time salaried officers or employees that was added in 1982.[7] In 1999 a bill was introduced in the Legislature to delete the word "salaried" from the definition and to define "part-time" to specifically include "members of organized nonpaid groups or individuals which operate as an adjunct to a police or sheriff's department, including reserve officers, posses and search and rescue groups."[8] At the hearing on this bill in the House Judiciary Committee, a member of the Kansas Law Enforcement Training Commission testified that there were over 1,000 reserve officers at work in Kansas; however nothing in the law required reserve officers to receive basic training. He further explained that the bill resulted from an extensive study concerning reserve officers conducted by the Kansas Law Enforcement Training Commission. The study concluded that most Kansas agencies would support mandated reserve officer basic training and certification.[9] A representative for the League of Kansas Municipalities testified in opposition to the bill, asserting that state-mandated training requirements for volunteer reserve officers would be cost-prohibitive for cities that, in the League's opinion, should be allowed to make training decisions at the local level, based upon the use of the officers and needs of the local community.[10] Although the House Judiciary Committee recommended the bill favorably for passage, the bill failed in the House Committee of the Whole. While the Legislature's failure to pass a bill is not necessarily indicative of legislative intent,[11] this legislative history indicates that those who testified at the committee hearing interpreted K.S.A. 74-5602(e) to exclude volunteer reserve officers.
In Attorney General Opinion No. 82-166, then Attorney General Stephan concluded that a non-salaried reserve officer is not a police officer or law enforcement officer for the purposes of the Act. The Opinion reasoned that K.S.A. 74-5602(e) clearly required that a police officer or law enforcement officer must be a salaried officer or employee of an appropriate governmental unit.
 "Accordingly, the training requirements imposed on full-time and part-time police and law enforcement officers are applicable only to such salaried officers and employees. Thus, since the reserve officers you mentioned in your inquiry are unsalaried, we necessarily conclude that they are not subject to these training requirements."[12]
That opinion did not address whether a salaried employee of a governmental unit who is not authorized to perform law enforcement duties for their salaried position falls within the definition if they volunteer as a reserve officer in their off-duty hours. In other words, if they are salaried by the State, a county or a city to perform non-law enforcement duties, are they required to complete training under the Act because they volunteer as a reserve officer? If so, then a salaried employee of the State or any county or city would be required to obtain training under the Act if they chose to be a volunteer reserve officer on their off-duty time, but any other volunteer reserve officer who is a nongovernmental employee[13] would not be required to obtain training to be a volunteer reserve officer. This interpretation would create a different standard for state, county or city employees who volunteer as reserve officers than for people who work for other entities and volunteer as reserve officers.
The Legislature is presumed to intend that its enactments be given a reasonable construction, so as to avoid absurd or unreasonable results.[14] An unreasonable result would occur if the statute in question is interpreted to require training for reserves who are employees of the State, a county or a city and not require training for reserves who are nongovernmental employees. Therefore, we opine that an employee of a city, county or state law enforcement agency whose salaried job functions do not include the performance of law enforcement duties does not fall within the definition of "police officer" or "law enforcement officer" under K.S.A. 2000 Supp. 74-5602(e) when that employee works as an unpaid volunteer for the same agency during his or her off-duty hours as a reserve police or law enforcement officer, and in the employee's volunteer capacity works to prevent or detect crime and enforce criminal or traffic laws.
Your next three questions refer to your first question and ask:
 "A. Does your interpretation change if the employee is not paid by the law enforcement agency but is paid directly by a school district, another governmental agency, or a private entity?
 "B. Does your interpretation change if the employee is not paid by the law enforcement agency but a reserve officer's organization (of which the employee is a member and thus the employee will benefit indirectly by the payment) is paid by a school district, another governmental agency, or a private entity?
 "C. Does your interpretation change if the employee is paid by the law enforcement agency but the law enforcement agency is reimbursed by a school district, another governmental agency, or a private entity as compensation for services the employee performed as a reserve law enforcement officer for the school district, other governmental agency, or private entity?"
Our interpretation would not change in any of the scenarios described in questions A, B and C. Based on the foregoing discussion, it is our opinion that K.S.A. 2000 Supp. 74-5602(e) does not require training for volunteer reserve officers. Therefore, as long as the compensation paid in the scenarios set forth above is for the performance of only non-law enforcement duties, the employee is not included in the definition of "police officer" or "law enforcement officer" set forth in the K.S.A. 2000 Supp. 74-5602(e).
Your next question involves the exemption in K.S.A. 2000 Supp.74-5602(e) for employees who perform correctional duties. That language states that the terms "police officer" and "law enforcement officer" shall not include:
 "[A]ny employee of a city or county who is employed solely to perform correctional duties related to jail inmates and the administration and operation of a jail . . . ."
You ask the following:
 "If an employee of a city or county who is `employed solely to perform correctional duties related to jail inmates and the administration and operation of a jail' performs or is authorized to perform any of the following acts, will that employee continue to fall within the correctional duties exemption provided by K.S.A. [2000 Supp.] 74-5602(e):
 "A. taking a person into custody when the person surrenders himself or herself pursuant to an arrest warrant, transporting prisoners;
 "B. taking a person into custody in a courtroom when ordered by a judge;
 "C. taking custody of a person initially arrested by another law enforcement agency; or
 "D. leaving his or her assigned correctional duties at the courthouse and responding to a request for backup or emergency assistance from a law enforcement officer employed by the same agency and subsequently assists in the subduing or arresting of offender(s)."
The above-quoted portion of K.S.A. 2000 Supp. 74-5602(e) was added by the Legislature in 1985 at the request of Shawnee County.[15] Because Shawnee County's jail is administered and operated by a department of corrections rather than by the sheriff, the County wanted to exempt its corrections officers, who perform only correctional duties related to jail inmates, from the general law enforcement training required by the Act and, instead, provide training specific to jail personnel.
The term "correctional duties" is not defined in the Act; however the duties of a corrections officer under the State Secretary of Corrections are set forth in K.S.A. 75-5202 as follows:
 "(f) `Corrections officer' means a full-time, salaried officer or employee under the jurisdiction of the secretary, whose duties include the receipt, custody, control, maintenance, discipline, security and apprehension of persons convicted of criminal offense[s] in this state and sentenced to a term of imprisonment under the custody of the secretary." (Emphasis added.)
While this statute does not apply to the Kansas Law Enforcement Training Act, we believe that the list of correctional duties performed by corrections officers in a state correctional institution are the same or similar to those performed by city or county employees who are employed solely to perform correctional duties related to jail inmates. Applying this list of duties to the scenarios presented in your question, it is our opinion that if the actions you describe in A, B, and C involve a jail inmate, then an employee who performs those duties would most likely fall within the correctional duties exemption provided by K.S.A. 2000 Supp. 74-5602(e). The actions you outline in D appear to go beyond correctional duties related to jail inmates and therefore may remove the employee from the correctional duties exemption, depending on the specific facts. Because a definitive answer to your question depends on the specific facts surrounding the particular actions described, we are unable to provide an opinion concerning those scenarios. Under specific circumstances, any of the scenarios you describe may or may not be considered "correctional duties related to jail inmates and the administration and operation of a jail."
Finally, you ask:
 "Is the opinion given in Attorney General Opinion 79-104 still valid with regard to the application of certification requirements to employees of a city, county or state agency who perform some law enforcement duties but who do not perform exclusively law enforcement duties? If the opinion is still valid, how does this reasoning apply in the first question with regard to the full-time training requirements of employees volunteering as reserve law enforcement officers for a law enforcement agency?"
Attorney General Opinion No. 79-104 considered whether an employee of a municipality who was employed full-time for the municipality as a city marshal and general maintenance man was a police officer or law enforcement officer within the meaning of K.S.A. 74-5602(e). The opinion concluded that even though an employee's working hours are not exclusively devoted to the prevention or detection of crime and the enforcement of criminal and traffic laws of the state or municipality, the employee fell within the definition. The opinion explained that the statute did not require that the employee devote full-time to law enforcement duties.
 "We believe that the `full-time' element contained in the definition relates to the employment status of the officer or employee rather than to the allocation of employee duties."
We believe that opinion is still valid. The employee who was the subject of the opinion falls within the definition of "law enforcement officer" under K.S.A. 2000 Supp. 74-5602(e) because his duties included the prevention or detection of crime and the enforcement of criminal or traffic laws of the State or a municipality. The opinion does not address training for volunteer reserve officers. Your first question involves an employee who, as such, is not authorized to perform law enforcement duties. In Attorney General Opinion No. 79-104, the employee was authorized to perform law enforcement duties at least part-time as a city marshal. A similar conclusion was reached in Attorney General Opinion No. 84-62 regarding parking service officers at the University of Kansas who engage in traffic control as part of their duties. That opinion determined that parking service officers who direct traffic, even as a very small part of their employment, are police officers under K.S.A.74-5602(e).
In summary, an employee of a city, county or state law enforcement agency who is not authorized to perform law enforcement duties does not fall within the definition of "police officer" or "law enforcement officer" under the Kansas Law Enforcement Training Act when that employee works as a volunteer for the same agency during the employee's off-duty hours as a reserve police or law enforcement officer and in the employee's volunteer capacity works to prevent or detect crime and enforce criminal or traffic laws. Whether certain acts by a person employed by a city or county solely to perform correctional duties related to jail inmates and the administration and operation of a jail fall within the correctional duties exemption provided by K.S.A. 2000 Supp. 74-5602(e) depend on the specific facts surrounding those acts. The conclusions stated in Attorney General Opinion No. 79-104 are affirmed.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm
[1] K.S.A. 74-5601 et seq.
[2] K.S.A. 2000 Supp. 74-5602(e).
[3] Robinett v. Haskell Co., 270 Kan. 95 (2000).
[4] Id.
[5] Id.
[6] L. 1973, Ch. 331, § 1.
[7] L. 1982, Ch. 322, § 2.
[8] 1999 H.B. No. 2278, § 1.
[9] Minutes, House Judiciary Committee, February 16, 1999, Attachment 6.
[10] Minutes, House Judiciary Committee, February 16, 1999, Attachment 8.
[11] U.S.D. No. 501 v. Baker, 269 Kan. 239, 246 (2000).
[12] Attorney General Opinion No. 82-166 (emphasis in original).
[13] For purposes of this opinion, "nongovernmental employee(s)" is deemed to include persons who are employed by private employers or governmental units other than the State, a county or a city.
[14] Rockers v. Kansas Turnpike Authority, 268 Kan. 110, 113
(1999).
[15] L. 1985, Ch. 258, § 1.